**FILED- LN**

July 22, 2025 9:32 AM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: eod  scanned by: eod / 07/22

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

IN THE MATTER OF:

Pamela Ruth Howe,
private citizen, living woman,
acting as sole beneficiary of the
David H. Ahonen and Ruth C. Ahonen Trust,
Sui juris,
     Plaintiff,

v.

Case:    1:25-cv-812

Hon. Hala Y. Jarbou

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF, COMPENSATORY
AND PUNITIVE DAMAGES UNDER
42 U.S.C.§1983, §1985, 18 U.S.C. §1964(c)
42 U.S.C.§1988
**SPECIAL LIMITED APPEARANCE**
DEMAND FOR TRIAL BY JURY

REQUEST TO HAVE CASE SEALED

Mabel J. Mayfield, personal capacity and official capacity
acting as Chief Judge at Berrien County Court;
Paul S. Jancha, personal capacity and official capacity
acting as Judge at Berrien County Court;
Gordon G. Hosbein, personal capacity and official capacity
acting as Judge at Berrien County Court;
Mowitt S. Drew, III, personal capacity and official capacity
acting as Attorney for Julie Thomsen and James Thomsen;
Barrett R. H. Young, personal capacity and official capacity
acting as Attorney for Julie Thomsen and James Thomsen;
Thaddeus Hackworth, personal capacity and official capacity
acting as Attorney for Paul S. Jancha and
acting as Corporate Counsel for Berrien County;
James Thomsen, personal capacity and official capacity
acting as Employee of Thomsen Brews LLC, Thomsen Holdings LLC,
RJ Holdings LLC;
Julie Thomsen, personal capacity and official capacity acting as
Resident Agent and Owner of the following Michigan
Limited Liability Companies: Thomsen Holdings LLC,
RJ Holdings LLC, Thomsen, Brews LLC, JT Enterprises LLC;

COUNTY OF BERRIEN, A Michigan municipal corporation,

BUTZEL LONG P.C., A Michigan corporation,
    Defendants.
          \

Pamela Ruth Howe
Private citizen, living woman
acting as sole beneficiary of the David H. Ahonen and Ruth C. Ahonen Trust
4569 Eleanor Drive,
Fenton, Michigan [48430]
810-397-0025
pamelarhowe02@gmail.com
Sui juris
Plaintiff

Mabel J. Mayfield
811 Port Street
St. Joseph, Michigan 49085
269-983-7111
mmayfield@berriencounty.org

Paul S. Jancha
811 Port Street
St. Joseph, Michigan 49085
269-983-7111
pjancha@berriencounty.org

Gordon G. Hosbein
1205 Front Street
Niles, Michigan 49120
269-684-5274
ghosbein@berriencounty.org

Mowitt S. Drew, III
811 Ship Street, Suite 301
St. Joseph, Michigan 49085
269-287-2000
drewm@butzel.com,

Barrett R. H. Young
811 Ship Street, Suite 301
St. Joseph, Michigan 49085
269-287-2000
youngb@butzel.com

Thaddeus Hackworth
701 Main Street,
St. Joseph, Michigan 49085
269-983-7111 ext. 8416
thackworth@berriencounty.org

COUNTY OF BERRIEN
701 Main Street,
St. Joseph, Michigan 49085
269-983-7111 ext

BUTZEL LONG P.C.
811 Ship Street, Suite 301
St. Joseph, Michigan 49085
269-287-2000
clarkc@butzel.com

James Thomsen
1337 Whispering Trail
Benton Harbor, Michigan 49022
269-325-2455
dddthomsen@gmail.com

Julie Thomsen
1337 Whispering Trail
Benton Harbor, Michigan 49022
269-325-0141
dddthomsen@gmail.com

# TABLE OF CONTENTS

INDEX OF EXHIBITS…………………………………………………………...…B

CASES………………………………………………………………………….......C D

LAWS……………………………………………………………………………….E

STATEMENT OF QUESTIONS………………………………………………F G H

I. INTRODUCTION………………………………………………………..…..Page 1

II.PARTIES ……………………………………………………………………...............Page 1

III.JURISDICTION AND VENUE  …………………………………………………Page 4

IV. LACK OF JURISDICTION BY HOSBEIN AND JANCHA………..…………….....Page 4

V. FACTUAL BACKGROUND REGARDING MASTER PLAN…………………….....Page 8

VI. CONFLICT OF INTEREST, 2 STORY PARKING GARAGE FOR COURTHOUSE..Page 10

VII. HISTORY AND JUDICIAL MISCONDUCT OF JANCHA..………………….... Page 14

VIII. MISCONDUCT BY THADDEUS HACKWORTH ……………….…………….. Page 19

IX. JUDICIAL MISCONDUCT BY HOSBEIN…………………………………….. Page 20

X.JUDICIAL MISCONDUCT BY MABEL MAYFIELD………………………….. Page 25

XI.MISCONDUCT BY DREW AND YOUNG……………………………………….. Page 29

XII.THOMSEN IS NOT AN INTERESTED PARTY AND LACKS STANDING ……… Page 34

XIII.CONSTITUTIONAL VIOLATION BY STATE ACTORS………………………… Page 36

XIV.PERSONAL LIABILITY OF STATE ACTORS……………………………….... Page 38

XV. CAUSES OF ACTION………………………………………………………….. Page 39

    COUNT I Violation of Due Process (42 U.S.C. § 1983)…………………………...Page 39

    COUNT II Violation of Equal Protection (42 U.S.C. § 1983) …….......................Page 40

    COUNT III Violation of Equal Protection (42 U.S.C. § 1983) ……………………..Page 42

    COUNT IV Conspiracy to Violate Civil Rights (42 U.S.C. § 1985)…………………Page 43

    COUNT V RICO Racketeering (18 U.S.C. § 1962(c))……………… ……………....Page 44

    COUNT VI Fraud and Collusion ………..………………….......................................Page 44

    COUNT VII Fourth Amendment Violation (42 U.S.C. § 1983)………………………Page 45

    COUNT VIII Judicial Misconduct & Obstruction of Justice (42 U.S.C.§ 1983)……..Page 46

    COUNT IX Conspiracy to Violate Civil Rights (42 U.S.C. § 1985)……………….. .Page 47

XVI. LEGAL AUTHORITY ……………………………………………………….. Page 49

XVII. BLANKET FAITHFUL PERFORMANCE BOND ………………………….. Page 57

XVIII.PRAYER FOR REMEDY ……………………………………………………. Page 57

## INDEX OF EXHIBITS

EX. 1  St. Joseph Downtown Vision Master Plan ("Master Plan")

EX.2  Walker Consultants Downtown Parking Plan dated May 24, 2024

EX. 3  Oaths and Paul Jancha's documents proving his delegated authority

EX. 4  Emily Hackworth, spouse of Thaddeus Hackworth

EX. 5  State of Michigan Attorney General Investigation into Thomsen financial crimes

EX. 6  Blanket Faithful Performance Bond

EX. 7  Tax Report for 105 Main Street and 106 Court Street

EX. 8  Judge Jancha's Orders signed July 15, 2025

EX 9 Mowitt Drew's Response of July 10, 2025 stating Pamela Howe is removed as Trustee

B

## INDEX OF AUTHORITIES

**CASES**

Norton v. Shelby County, 118 U.S. 425 (1886)………………………………… 5,6 7 24 26 50 58

Griffin v. Illinois, 351 U.S. 12, 17 (1956) ………………………………….…….....……5 16

Ex parte Young, 209 U.S. 123, 159 (1908)………………………………18 19 24 28 31 33 39 50 58

Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 876 (2009)………18 31 37 38 39 42 47 53 59

Borough of Duryea v. Guarnieri, 564 U.S. 379, 387 (2011)…………..7 17 18 23 27 28 32 34 36

In re Murchison, 349 U.S. 133 (1955)….…………………………………………..... 12

Hagans v. Lavine, 415 U.S. 533 (1974):)……………………………………..……… 12 55

Mathews v. Eldridge, 424 U.S. 319, 333 (1976)……….………..15 20 25 28 37 40 41 49 57 59

Fletcher v. Peck, 10 U.S. 87, 139 (1810)…........................................................…15 22

Kelo v. City of New London, 545 U.S. 469, 477 (2005)……………………16 19 28 31 33 37 56

Griffin v. Illinois, 351 U.S. 12, 17 (1956)…………......................................................…1 2 3 4 5 6

Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985)………………………..… 16 21

Hack v. Concrete Wall Co., 350 Mich. 118, 127 (1957)……………………….17 20 25 28 31 55

Green v. Mansour, 474 U.S. 64, 68 (1985)……………………………………………18 23 29 33

Campau v. Van Dyke, 15 Mich. 371, 380 (1867)……………………………………………18 30

Jackson v. Beech, 636 F.2d 831, 835 (D.C. Cir. 1980) ……………………………………..…22

Barker v. Wingo, 407 U.S. 514, 521 (1972)). …………………………………………………… 22

H.J., Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 241–42 (1989). ……….….......30 32

United States v. Conahan, No. 3:09-CR-272 (M.D. Pa. 2009). ………………..…….................32 33

Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)…………………………33 39 44 56 60

In re Estate of Jones, 488 Mich. 1023 (2010)……………………………………………….......34 56

Board of Regents v. Roth, 408 U.S. 564 (1972)…………………..………………….......... 40 49

Chicago, Burlington & Quincy Railroad Co. v. Chicago, 166 U.S. 226 (1897)…………........40 50

Yick Wo v. Hopkins, 118 U.S. 356 (1886)……………………………………………….......37 41 51

Holden v. Hardy, 169 U.S. 366, 391 (1898)……………………………………………… 41 51

Trustees of Dartmouth College v. Woodward, 17 U.S. 518 (1819) …………..…........... 43 52 58

Allied Structural Steel Co. v. Spannaus, 438 U.S. 234 1978)……………………..…........... 43 52

Griffin v. Breckenridge, 403 U.S. 88 (1971)……………………………………….......16 44 48 53

c

Trost v. Buckstop Lure Co., 249 Mich. App. 580 (2002) ………………………….…............45 56

Katz v. United States, 389 U.S. 347 (1967)…………………………………………....36 38 45 52 57

Ex parte Virginia, 100 U.S. 339 (1879)……………………………………………….... 47 48 52

Kush v. Rutledge, 460 U.S. 719 (1983)…………………………………….…..................48 53

Scott v. McNeal, 154 U.S. 34, 46 (1894).......................................................................................... 50

United States v. Throckmorton, 98 U.S. 61, 65-66 (1878)…………………….................. 53 59 60

Melo v. US, 505 F.2d 1026, 1030 (8th Cir. 1974)……………………………………….......39 55

Old Wayne Mut. L. Assoc. v. McDonough, 204 U.S. 8, 15 (1907)………………...………........55

Sramek v. Sramek, 17 Kan. App. 2d 573, 576-77, 840 P.2d 553 (1992)………..………...............55

Main v. Thiboutot, 448 U.S. 1, 4 (1980)………………………………………………..................55

Smith v. Wade, 461 U.S. 30 (1983)…………………………………………………….…..........55

Harlow v. Fitzgerald, 457 U.S. 800 (1982)……………………………………………….. 57

Horne v. Department of Agriculture, 576 U.S. 350, 362 (2015)………………………………….. 56

Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 537 (2005)…………………………..……… 56

Tower v. Glover, 467 U.S. 914, 920 (1984)…………………………………………………… 54

Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970)……………………………..……… 54

Dennis v. Sparks, 449 U.S. 24, 27–28 (1980) …………………………………..……... 54

Stump v. Sparkman, 435 U.S. 349, 356–57 (1978) ………………………………………54

Mireles v. Waco, 502 U.S. 9, 11–12 (1991) …………………………………………………54

Pulliam v. Allen, 466 U.S. 522, 541–42 (1984)……………………………………………54

Payton v. New York, 445 U.S. 573, 587 (1980) …………………………………………….42

United States v. Miller, 425 U.S. 435, 442 (1976) ……………………………………… 52

Gibson v. Berryhill, 411 U.S. 564, 578–79 (1973) ………………………………………51

Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)…………………………………… 51

Ward v. Village of Monroeville, 409 U.S. 57, 60 (1972) ……………………………………50

Carey v. Piphus, 435 U.S. 247, 259 (1978) …………………………………………50

## JUDICIAL PUBLICATION

*Section 1983 Litigation* (Federal Judicial Center, 3rd Ed.)

D

# LAWS

**CONSTITUTIONAL PROVISIONS**
U.S. Constitution Article 1, Section 10.
U.S. Constitution Article III
U.S. Constitution Article VI, Clause 2 – Supremacy Clause

**AMENDMENTS**
First Amendment
Fourth Amendment
Fifth Amendment
Sixth Amendment
Fourteenth Amendment

**FEDERAL LAWS**
42 U.S.C. § 1983
42 U.S.C. § 1985
28 U.S.C. § 1331
28 U.S.C. § 1343
28 U.S.C. § 1367
28 U.S.C. § 1391
28 U.S.C. § 2201
18 U.S.C. §§ 1961–1968 Racketeer Influenced and Corrupt Organizations Act
18 U.S.C. § 1962
18 U.S.C. § 1964

**MICHIGAN COMPILED LAWS**
MCL 600.847
MCL 700.21
MCL 700.2803
MCL 750.271

**MICHIGAN COURT RULES**
MCR 2.603(A)(1),
MCR 2.117

**CANON LAW**
Canon 2, Canon 3

**COURT OF APPEALS CASE** State of Michigan Court of Appeals No. 375572

**WESTERN DISTRICT OF MICHIGAN CASE**

Prudential Life Insurance Policy of David Harold Ahonen        Docket No: 1:24-cv-1131

E

## STATEMENT OF QUESTIONS

1. Does Judge Paul Jancha have jurisdiction to issue orders in the Berrien County Probate Court cases for the removal of Pamela Ruth Howe as Trustee and the appointment of Julie Thomsen as Trustee, without a motion from an interested party given the absence of a valid probate-specific oath of office as required by Article VI, Clause 3 of the U.S. Constitution and MCL 600.847, rendering his actions void ab initio under *Norton v. Shelby County*, 118 U.S. 425, 439 (1886)?

> Plaintiff says "Yes."
>
> Defendant says "No."
>
> Trial Court says "No"

2. Did Judge Gordon Hosbein act without lawful jurisdiction in the Berrien County Probate Court cases from January to November 2024, including issuing orders to remove the lis pendens on Trust property at 12260 Flynn Road, Sawyer, Michigan, by failing to provide proof of delegated authority in response to Plaintiff's Averment of Quo Warranto, Notice of Liability, and Notice of Default, thereby rendering his actions void ab initio under *Norton v. Shelby County*, 118 U.S. 425, 439 (1886)?

> Plaintiff says "Yes."
>
> Defendant says "No."
>
> Trial Court says "No"

3. Does Judge Paul Jancha have the authority to violate the spendthrift provision of the David H. Ahonen and Ruth C. Ahonen Trust, protected under Article I, Section 10 of the U.S. Constitution, and issue an order remove Plaintiff as Trustee without a motion or evidence from an interested party and appoint Julie Thomsen, a non-interested party disqualified under the Trust's no-contest clause, as a Trustee thereby unconstitutionally impairing the Trust's contractual obligations as established by *Trustees of Dartmouth College v. Woodward*, 17 U.S. 518 (1819)?

> Plaintiff says "Yes."
>
> Defendant says "No."
>
> Trial Court says "No"

F

4. Did Chief Judge Mabel Mayfield, Judge Paul Jancha, Judge Gordon Hosbein, Thaddeus Hackworth, Mowitt Drew, Barrett Young, and Butzel Long P.C., knowingly conceal the *City of St. Joseph's Downtown Vision Master Plan*, which targets Trust property at 106 Court Street and 105 Main Street for the development of a two-story parking garage for the Berrien County Courthouse and residential and office space, thereby creating a conflict of interest that compromised judicial impartiality and violated Plaintiff's due process and equal protection rights under the Fourteenth Amendment, as supported by *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876 (2009)?

Plaintiff says "Yes."

Defendant says "No."

Trial Court says "No"

5. Did Defendants engage in a coordinated conspiracy under 42 U.S.C. § 1985 to deprive Plaintiff of her constitutional rights under the First, Fourth, Fifth, and Fourteenth Amendments by submitting and accepting fraudulent affidavits, issuing void orders, denying Plaintiff's motions, attempting to remove Plaintiff as Trustee and concealing the Master Plan to facilitate the unlawful acquisition of Trust property at 106 Court Street and 105 Main Street , as actionable under *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)?

Plaintiff says "Yes."

Defendant says "No."

Trial Court says "No"

6. Did Defendants' actions, including the submission of fraudulent affidavits, issuance of void orders, and concealment of the Master Plan to acquire 106 Court Street and 105 Main Street, constitute a pattern of racketeering activity under 18 U.S.C. § 1962(c), forming a RICO enterprise that caused injury to Plaintiff's property and fiduciary rights, entitling her to treble damages under *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)?

Plaintiff says "Yes."

Defendant says "No."

Trial Court says "No"

G

7. Did Judge Paul Jancha, Judge Gordon Hosbein, and Chief Judge Mayfield violate Plaintiff's Fourteenth Amendment due process rights by issuing ex parte orders, falsifying docket entries, denying Plaintiff's motions without hearing, and failing to supervise or intervene in judicial misconduct, thereby obstructing Plaintiff's access to a fair and impartial tribunal, as established by *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)?

> Plaintiff says "Yes."
>
> Defendant says "No."
>
> Trial Court says "No"

8. Did Defendants' act in collusion in a scheme to acquire 106 Court Street and 105 Main Street for a new courthouse parking garage and new retail and office space without just compensation for Plaintiff, violate the Takings Clause of the Fifth Amendment, as the Trust property was targeted for public use under the Master Plan without providing Plaintiff with due process or compensation, as prohibited by *Kelo v. City of New London*, 545 U.S. 469, 477 (2005)?

> Plaintiff says "Yes."
>
> Defendant says "No."
>
> Trial Court says "No"

H

## I. Introduction

This civil rights action is brought by Pamela Ruth Howe, a living woman and private citizen (hereinafter "Plaintiff", "Pamela"), under **28 U.S.C. § 1331**, which provides federal question jurisdiction for claims arising under the U.S. Constitution and federal statutes,  including **42 U.S.C. § 1983**. Additionally, **28 U.S.C. § 1343(a)(3)** explicitly grants jurisdiction over civil rights claims, encompassing both **§ 1983 and § 1985** actions which include violations of Plaintiff's constitutional rights by Defendants, as state actors, acting under color of state law. Plaintiff, is a living woman, who acts as the sole beneficiary of the David H. Ahonen and Ruth C. Ahonen Trust ("Trust") and sometimes acts as Executor and Personal Representative of the estates of David Harold Ahonen and Ruth Carolyn Ahonen ("estates"). Plaintiff alleges that Defendants engaged in judicial misconduct, fraud, and conspiracy to deprive her of due process, equal protection, and property rights under the U.S. Constitution in the cases numbers: 2024-0809-CZ. 2025-0159-CZ, 2024-0070-DE-G, 2024-0071-DE-G (hereinafter "cases"). Plaintiff reserves the right to amend the complaint.

## II.Parties

1. **Plaintiff Pamela Ruth Howe,** a living woman who sometimes acts as sole beneficiary of the Trust, who sometimes acts as Executor and Personal Representative of the deceased estates of David Ahonen and Ruth Ahonen, whose wills are pour over wills to the Trust. (hereinafter "Plaintiff", "Pamela")

2. **Defendant Mabel Mayfield,** a woman who sometimes acts as chief judge of the Berrien County Court who oversaw the judicial proceedings in the cases, neglected to intervene and rectify instances of judicial misconduct described below, contributing to the violation of Plaintiff's rights. (hereinafter "Mabel Mayfield", "Mayfield", "Chief Judge Mayfield")

3. **Defendant Paul S. Jancha,** a man who sometimes acts as district judge of the Berrien County Probate Court (hereinafter "Paul Jancha", "Jancha", "Judge Jancha")

4. **Defendant Gordon G. Hosbein,** a man who sometimes acts as judge of the Berrien County Probate Court on the cases from January to November 2024 (hereinafter "Gordon Hosbein", "Hosbein", "Judge Hosbein")

1

5. **Defendant Mowitt Drew,** a man who sometimes acts as attorney and who acts as employee of Butzel Long PC, and who acts as counsel for Julie and James Thomsen (hereinafter "Drew")

6. **Defendant Barrett Young** a man who sometimes acts as attorney and who acts as employee of Butzel Long PC, and who acts as counsel for Julie and James Thomsen (hereinafter "Young")

7. **Defendant Thaddeus Hackworth,** a man who sometimes acts as Corporate Counsel for Berrien County and sometimes acts as Counsel for Paul S. Jancha, and sometimes acts as spouse to Emily Hackworth, City Manager for City of St. Joseph, Michigan (hereinafter "Thaddeaus Hackworth", "Hackworth")

8. **Defendant BUTZEL LONG P.C.** a law firm located in St. Joseph Michigan

9. **Defendant County of Berrien** a municipal corporation in Michigan, ( "Berrien County")

10. **Defendant Julie Thomsen,** a woman who sometimes acts as resident agent of Thomsen Holdings LLC, RJ Holdings LLC, Thomsen Brews LLC, JT Enterprises LLC acted as a state actor by willfully participating in a joint enterprise with state officials (defendants) to perpetrate fraud, embezzlement, and constitutional violations against Plaintiff. Thomsen's egregious misconduct include: filing fraudulent petitions and affidavits in coordination with Drew and Young, concealment of her life insurance fraud, credit card fraud, embezzlement and conversion of Trust assets, forgery and theft. Thomsen, as a private individual, is liable as a state actor under **42 U.S.C. § 1983** due to her willful participation in a joint enterprise with state officials to deprive Plaintiff of her constitutional rights.By filing fraudulent documents and **leveraging Berrien County courts** to be a Trustee, remove lis pendens, avoid taxes, avoid returning Trust and estate assets, and furthering the fraud, Thomsen invoked state authority, satisfying the Lugar test for state action. ("Thomsen").

11. **Defendant James Thomsen,** a man who is the spouse of Thomsen and directly benefitted from Thomsen's fraud, concealed the fraud, participated in the fraud and is a state actor due to his collusion with Thomsen, Drew and Young to further the fraud. ("James").

Defendants engaged in a coordinated scheme to facilitate the unlawful deprivation of Trust properties, **105 Main Street and 106 Court Street** (connected parcels), in St. Joseph,

Michigan (**hereinafter "106 Court Street"**) for the benefit of County of Berrien, Berrien County Courthouse, and the City of St. Joseph. This conduct was motivated by a conflict of interest arising from the City of St. Joseph's Downtown Vision Master Plan ("Master Plan"), (see EX.1) which designates **106 Court Street** for the development of a two-story parking structure to serve the Berrien County Courthouse, thereby creating an improper financial incentive for Defendants' actions in violation of Plaintiff's rights.

Judge Jancha, through is fraudulent orders with no jurisdiction wrongfully removed Pamela Ruth Howe as Trustee of the Trust, and appointed Julie Thomsen ("Thomsen") as Trustee, despite the fact that Thomsen is under investigation by the State of Michigan Attorney General for her financial crimes including embezzlement of Trust assets, credit card fraud, forgery and insurance fraud. (EX. 2)

Judge Jancha and Judge Hosbein's unethical conduct through fraudulent orders,  acceptance of fraudulent motions with false affidavits,  judicial overreach, systematic denial of Plaintiff's motions and objections, Judge Jancha's removal of Pamela Ruth Howe as Trustee, Judge Jancha's orders to close the estates before any discovery, trial or recovery, denial of any recovery of Trust assets, and tampering with the Register of Actions and plaintiff's filings, denied fair hearings, denied trial by jury, denied discovery and denied recovery of assets in the Trust and estates.  Further, Judge Jancha granted Drew's fraudulent motion to sanction plaintiff (in Drew and Young's lawsuit 2025-0159-CZ) to harass and cause further harm to Plaintiff.

Based on information and belief, defendant's coordinated and egregious actions, including their scheme to remove Pamela as Trustee and prematurely close the probate cases, removal of lis pendens on property, constitute a deliberate and unlawful effort to advance their plan to acquire Trust property, **106 Court Street**, for the development of a parking garage to serve the Berrien County Courthouse. This conduct, driven by an improper financial incentive, is a blatant violation of Plaintiff's rights and the private Trust.

Defendants' actions deprived Plaintiff of her constitutional rights under the First Amendment (right to petition), Fourth Amendment (security in property), Fifth Amendment (due process and takings), and Fourteenth Amendment (due process and equal protection), as well as Michigan state law. Their scheme to fraudulently obtain **106 Court Street** without just compensation

3

constitutes an unlawful taking in violation of the Takings Clause of the Fifth Amendment. Plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages, and the full restoration of her rights and property.

## III. Jurisdiction and Venue

This Court has jurisdiction over this action under **28 U.S.C. § 1331**, which provides federal question jurisdiction for claims arising under the U.S. Constitution and federal statutes, including **42 U.S.C. § 1983**. This statute serves as the primary mechanism for redressing constitutional violations by state actors in federal court, as noted in *"Section 1983 Litigation"* (Federal Judicial Center, 3rd Ed.) at 1. Additionally, **28 U.S.C. § 1343(a)(3)** explicitly grants jurisdiction over civil rights claims, encompassing both § 1983 and § 1985 actions.

Plaintiff alleges that Defendants, acting under color of state law, violated her constitutional rights through a scheme involving judicial misconduct, fraud, and conspiracy to seize Trust property for a parking garage. These claims satisfy the jurisdictional requirements for § 1983 by asserting deprivations of rights secured by the First, Fourth, Fifth, and Fourteenth Amendments. The § 1985 claim, alleging a conspiracy to interfere with civil rights, further falls within this Court's purview, as discussed in *"Section 1983 Litigation"* at 187–88, which outlines the applicability of § 1985 to conspiracies by state actors.

Venue is proper under **28 U.S.C. § 1391(b)(2)**, as the events giving rise to this complaint occurred in Berrien County, within the Western District of Michigan, Southern Division.

Supplemental jurisdiction over related state law claims, including violations of Michigan's Estates and Protected Individuals Code (MCL 700.21 et seq.), is proper under 28 U.S.C. § 1367(a), as these claims derive from the same nucleus of operative facts—the fraudulent scheme to misappropriate Trust property at 106 Court Street for the development of Berrien County Courthouse's parking garage, as outlined in the City of St. Joseph's Downtown Vision Master Plan. ("Master Plan") (EX. 1) Venue is proper under 28 U.S.C. § 1391(b)(2), as all events giving rise to this complaint, including Defendants' collusive actions and judicial misconduct, occurred in the County of Berrien, within the Western District of Michigan, Southern Division.

4

## IV. Lack of Jurisdiction by Hosbein and Jancha

1. **Paul Jancha's Lack of Judicial Authority:**

   Paul Jancha's exercise of judicial authority in the Berrien County Probate Court is wholly void due to his lack of a valid oath of office for probate court jurisdiction, as required by Article VI, Clause 3 of the U.S. Constitution and MCL 700.21. A Freedom of Information Act (FOIA) response received by Plaintiff, confirms that Jancha holds only a District Court oath (EX. 3), filed with the Michigan Secretary of State on January 3, 2019, and no oath specific to the Berrien County Probate Court, as mandated by MCL 600.847 for probate judges. This absence of a proper oath renders Jancha's actions, including his issuance of fifteen orders on July 15, 2025, ultra vires and legally void ab initio, as "an officer who acts without being duly sworn… has no authority, and his acts are nullities" (*Norton v. Shelby County*, 118 U.S. 425, 439 (1886)). Jancha's unauthorized orders, from motions from parties who lack standing, including the removal of Plaintiff as Trustee and the fraudulent appointment of Julie Thomsen as Trustee, compromised the court's impartiality, violated Plaintiff's due process rights under the Fourteenth Amendment, and facilitated the fraudulent scheme to acquire 106 Court Street. These actions necessitate the immediate transfer of all related cases to a neutral jurisdiction outside the County of Berrien to ensure fair and unbiased adjudication (*Griffin v. Illinois*, 351 U.S. 12, 17 (1956) ("the Equal Protection Clause requires the State to provide equal access to its courts without discrimination")). (EX 3)

2. **Jurisdiction in Judge Jancha's Court hearing July 15, 2025**

   In the court hearing on July 15, 2025, Young told Judge Jancha that he "should deny Plaintiff's motion to disqualify him because it references the United States Constitution but **this is state court and not a federal court so Article III of the constitution does not apply and Michigan statutes and court rules apply here**....litigants receive decisions they don't like but that doesn't create the basis for disqualification...she is not happy with your decisions."

5

**Plaintiff responded and stated, "the US Constitution is the supreme law of the land** and you cannot dismiss constitutional rights and statutes and codes do not override the US Constitution." Plaintiff also stated she is "protected by the constitution and Article III does apply here....and you Judge have never proven jurisdiction."

Jancha dismissed Plaintiff's statements regarding the US Constitution, constitutional rights and jurisdiction and instead he stated "all the orders are signed and you can appeal to the court of appeals."

**Jancha's dismissal of Plaintiff's constitutional arguments, stating, constitutes a deliberate rejection of the Supremacy Clause (U.S. Constitution Article VI, Cl 2)**

3. **Gordon Hosbein's Failure to Provide Delegation of Authority**:
   Gordon Hosbein's refusal to provide proof of his delegation of authority further invalidates his actions in the Berrien County Probate Court, constituting an admission of acting without jurisdiction. Plaintiff served Hosbein with an *Averment of Quo Warranto* (dated November 8, 2024), *Notice of Liability* (dated December 9, 2024), and *Notice of Default* (dated December 20, 2024) demanding written evidence as proof of his delegated authority to preside over the Trust and estate cases. Hosbein's failure to respond or provide such evidence constitutes a concession that his actions, including the unlawful removal of a lis pendens on Trust property at 12260 Flynn Road, Sawyer, Michigan, and delays in adjudication, were without legal authority and are void ab initio (*Norton v. Shelby County*, 118 U.S. 425, 439 (1886) ("an unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office")). (EX 3)

4. **Mayfield's Failure to Respond to Notices to Hosbein and Jancha:** Mayfield received a copy of the notices sent to Hosbein and Jancha requesting written proof of Delegated Authority and proof of jurisdiciton, all of which Mayfield deliberately ignored, thereby obstructing Plaintiff's access to justice and perpetuating judicial misconduct:

   a) Averment of Jurisdiction Quo Warranto (November 8, 2024): Mailed via certified mail to Gordon G. Hosbein with a copy to Mayfield, demanding written proof of

6

Hosbein's delegated authority. Mayfield's failure to respond or compel Hosbein to provide such proof constitutes an admission of lack of jurisdiction, as "an unconstitutional act is not a law; it confers no rights; it imposes no duties; it creates no office" (*Norton v. Shelby County*, 118 U.S. 425, 439 (1886)).

b) Notice of Liability (December 9, 2024): Demanded Hosbein's delegation of authority to administer the estate.  PAMELA RUTH HOWE. Mayfield, aware of Hosbein's non-response, failed to intervene, further enabling unauthorized judicial actions.

c) Notice of Default (December 20, 2024): Notified Hosbein of his default for failing to provide jurisdictional authority, with a copy to Mayfield. Her inaction ratified Hosbein's lack of jurisdiction, violating Plaintiff's right to due process.

d) Averment of Jurisdiction was sent to Paul S. Jancha (May 19, 2025): Mailed via certified mail with a copy to Mayfield, demanding Jancha's proof of delegated authority. The mailing to Jancha was returned on May 31, 2025 by the court clerk Jessica Brown, yet Mayfield neither responded nor required Jancha to provide proof, further obstructing Plaintiff's rights.

5. **Necessity for Transfer Cases to Neutral Jurisdiction**:

The egregious jurisdictional failures of Judges Jancha and Judge Hosbein, compounded by their collusive actions to facilitate the fraudulent acquisition of 106 Court Street, undermine the impartiality of the Berrien County Probate Court. Jancha's lack of a probate-specific oath and Hosbein's refusal to provide delegation of authority, combined with their roles in the Master Plan scheme, constitute a systemic bias that violates Plaintiff's right to a fair and impartial tribunal (*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876 (2009) ("due process requires a fair hearing before an impartial tribunal")). The FOIA evidence and unanswered notices further confirm the court's compromised integrity, necessitating the immediate transfer of all related cases to a court outside the county of Berrien to safeguard Plaintiff's constitutional rights under the First, Fifth, and Fourteenth Amendments (*Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387

(2011) ("the right to petition protects the right to access the courts without fear of nterference")).

## V. Factual Background Regarding Master Plan

### 1. The Trust Property at 106 Main Street

Plaintiff is the sole beneficiary of the David H. Ahonen and Ruth C. Ahonen Trust, established by her parents, David Harold Ahonen and Ruth Carolyn Ahonen and is the nominated Trustee of the Trust. The Trust owns multiple properties, including a commercial building at 105 Main Street and 106 Court Street (connected properties), St. Joseph, Michigan, (hereinafter "106 Court Street") valued at over 5 million dollars ($5,000,000.00).

Plaintiff is the nominated Executor and Personal Representative of the estates of David Harold Ahonen and Ruth Carolyn Ahonen, whose wills are pour-over wills to the Trust.

### 2. City of St. Joseph's Downtown Vision Master Plan

A FOIA response from Abby Bishop of the City of St. Joseph on 6/23/2025 included the

*St. Joseph Downtown Vision Master Plan* ("Master Plan") contains 125 pages. (EX. 1).

a) Pages 37 and 40 detail **site #12 which is 106 Court Street and 105 Main Street** and details the plan for a **2 Story Parking Garage for the Berrien County courthouse**, Multi Family residential unit and commercial office buildings.

b) Page 39 details the current courthouse parking lot to be developed into residential and commercial offices.

c) Page 110 states: "Coordinate with Berrien County to encourage the development of **a new parking garage for the County Courthouse; Partner is Berrien County"** (note: Thaddeus Hackworth is Corporate Counsel for Berrien County)

In the *Walker Consultant Downtown Parking Plan* for City of St. Joseph, Michigan dated May 24, 2024 (EX. 2)

a) Page 8 details the parking system description, which includes 106 Court Street.

8

b) Page 43 recommends the Master Plan and Page 44 recommends the approval of the future parking system.

Walker Consultants recommended the Master Plan and detailed the benefits of the Master Plan including additional parking and revenue. The Master Plan includes the development of the parking garage for the courthouse on 106 Court Street, which is property owned by the Trust. Further, the **timing of this recommendation on May 24, 2024 aligns with Plaintiff's filing of her complaint on April 30, 2024 and the beginning of the fraudulent scheme and concealment** by defendants to fraudulently obtain the connected 106 Court Street and 105 Main Street properties.

3. **Master Plan identifies 106 Court Street as a critical site for a two-story parking garage to serve the Berrien County courthouse,** located nearby and benefit Butzel Long PC and the public.

a) Emily Hackworth, St. Joseph City Manager, oversees the DDA and the Master Plan, including the parking garage project, which aims to provide parking for courthouse staff, visitors, and operations while generating revenue for the city (EX. 4)

b) Emily Hackworth is married to Thaddeus Hackworth, who acts as Berrien County Corporate Counsel, who sometimes acts as counsel for Paul Jancha in a 2025 Court of Appeals Writ of Mandamus case filed by Plaintiff challenging the probate court's actions. This marital and professional relationship creates a significant conflict of interest.

c) The parking garage project directly benefits Berrien County, and Berrien County Courthouse, giving Defendants a vested interest in removing Plaintiff as Trustee to gain control of 106 Court Street. A Freedom of Information Act (FOIA) response from the City of St. Joseph, dated May 15, 2024, confirms the planned use of the property for this purpose.

4.**The Master Plan creates a significant conflict of interest** in the Berrien County Probate Court proceedings (cases 2024-0070-DE, 2024-0071-DE, 2024-0809-CZ, and 2025-0159-CZ), compromising judicial impartiality and violating constitutional and ethical standards.

**5. Key Relationships and Conflicts**

a) **City and County Connections**: Emily Hackworth, the City Manager of St. Joseph supervises the DDA and is responsible for implementing the plan for the proposed parking garage for the courthouse. Emily Hackworth is married to Thaddeus Hackworth, who acts as corporate counsel for Berrien County and Berrien County is a partner in the Master Plan in the development of the 2-story parking garage.

b) **Thaddeus Hackwork acted as** counsel for Judge Paul Jancha in Plaintiff's Court of Appeals Writ of Mandamus case in 2025, regarding matters related to protecting the properties belonging to the Trust from further harm.

This web of personal and professional relationships creates a direct conflict of interest and undermines judicial impartiality.

**6.Court's Benefit from the 2 Story Parking Structure to be built on 106 Court Street**

The two-story parking structure planned for 106 Court Street is designed to enhance courthouse functionality by providing convenient parking and supporting operational needs.  It is designed to serve the Berrien County courthouse, providing convenient parking for its staff, visitors, operations and the public. This **direct benefit to the court creates a vested interest in the outcome of this litigation involving 106 Court Street**, as Jancha's court rulings facilitating the city's acquisition of 106 Court Street that would enhance courthouse functionality and provide continuous revenue for the city. This interest compromises the court's and Jancha's ability to adjudicate impartially, raising serious ethical and constitutional concerns.  Further, the timing of the Walker Consultant Report of May 24, 2024 approving the Master Plan is clear evidence the unconstitutional acts by defendants to further the scheme to obtain the Trust property at 106 Court Street.

## VI. Conflict of Interest in the 2 Story Parking Garage for Courthouse to be built on 106 Court Street

The following outlines the conflicts and violations stemming from this conflict of interest:

10

1. **Judicial Impartiality Compromised**

   The court's benefit from the parking structure, combined with Judge Jancha's prior representation by Thaddeus Hackworth as corporate counsel—whose spouse, Emily Hackworth, as St. Joseph City Manager who oversees the city's Master Plan including the plan for a 2 story parking structure on 106 Court Street for the courthouse, and Thaddeus Hackworth as corporate counsel is a partner in the development of the 2 story parking garage for the courthouse. This creates a clear conflict. The court's interest in 106 Court Street explains its handling of the cases, and Jancha's unethical rulings including:

   a) Denying Pamela's motion for a change of venue without valid rationale.

   b) Refusing Pamela's motions to require Thomsen to pay property taxes on the properties, including 106 Court Street.

   c) Failing to remove Butzel Long's fraudulent Attorney Charging Lien on all properties, including 106 Court Street.

   d) Marking Pamela's objections as "HEARD" on the Register of Actions when they were not actually heard.

   e) Fraudulently removing Pamela as Trustee of the Trust to eliminate her from recovering and obtaining 106 Court Street for the Trust

   f) Appointing Thomsen as Trustee, despite her financial crimes on the Trust, all to prevent the Trust from access to 106 Court Street.

   g) Closing the deceased estates of David and Ruth Ahonen to remove Pamela from obtaining all property belonging to the estate and Trust. The wills are pour-over-wills to the Trust.

2. **Appearance of Impropriety**

   The familial and professional ties between Judge Jancha, Thaddeus Hackworth, and Emily Hackworth, alongside the court's benefit from the parking structure creates an unacceptable appearance of bias, violating Canon 2 of the Michigan Code of Judicial Conduct.

11

3. **Violation of Michigan Code of Judicial Conduct, Canon 3(C)**

    Canon 3(C) mandates recusal when a judge's impartiality is reasonably questioned. The court's direct benefit from the parking structure, as evidenced by the FOIA response, and the unethical conduct and violations of Pamela's constitutional rights, all necessitate disqualification.

4. **Supporting Case Law:**

    a) *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009): A judge's failure to recuse in the presence of a significant conflict of interest violates due process.

    b) *In re Murchison*, 349 U.S. 133 (1955): Judicial bias arising from personal or financial interests voids impartiality and due process.

    c) *Hagans v. Lavine*, 415 U.S. 533 (1974): Courts lack discretion to ignore jurisdictional or ethical challenges.

5. **Concealment of Conflict of Interest**: Defendants concealed its interest in the 106 Court Street property since April 2024, which is the subject in litigation in all cases and integral to the city's development Master Plan which includes a parking garage for the courthouse. This concealment violates Canon 2(A) of the Michigan Code of Judicial Conduct, which requires judges to avoid impropriety or its appearance.

6. **Unjust Denial of Plaintiff's Motions**: The court's conflict of interest led to Jancha's improper denial of Pamela's motions, including:

    a) Denied motion to change venue to another county for an impartial hearing so that Berrien County Court will remain in control of their concealed fraud by the court.

    b) Denied motion to require Thomsen to pay property taxes owed on Trust properties to prevent further harm from back taxes owed (EX 7)

    c) Denied motion to remove a fraudulent Attorney Charging Lien imposed by Drew on all Trust properties

    d) Denied motion for stay pending appeal

 e) Denied request for a constructive trust over properties to protect from harm

7. **Chief Judge Mayfield Culpability in Judicial Misconduct and Constitutional Violations:** Defendant Mabel Mayfield, as Chief Judge of the Berrien County Court, knowingly and with deliberate indifference failed to supervise, oversee, or intervene in the judicial misconduct perpetrated in the probate and circuit court proceedings involving Plaintiff Pamela Ruth Howe's Trust and estate assets, including the property at 106 Court Street, a Trust asset.

In her supervisory capacity, Defendant Mayfield had actual or constructive knowledge of the Master Plan, which targeted the Trust property at 106 Court Street for a municipal parking garage, thereby creating a conflict of interest. Despite this knowledge, Mayfield willfully concealed material facts from Plaintiff, including the municipal interest in the Trust property, since April 30, 2024. Furthermore, Mayfield knowingly permitted and facilitated ongoing concealment of this conflict by judicial officers and opposing counsel, thereby enabling vexatious litigation to persist for over one year.

Mabel Mayfield, in her capacity as Chief Judge of the Berrien County Court, deliberately or with reckless disregard failed to rule on or grant Plaintiff's motion to disqualify Judge Jancha, despite clear evidence of his egregious judicial misconduct, thereby perpetuating violations of Plaintiff's due process rights under the Fourteenth Amendment to the United States Constitution, actionable under 42 U.S.C. § 1983.

By failing to ensure the recovery of Trust and estate assets and allowing fraudulent judicial proceedings to continue unabated and further the scheme to obtain 106 Court Street for the development of the parking garage for the courthouse, Mayfield violated Plaintiff's constitutionally protected rights to due process and equal protection under the Fourteenth Amendment to the United States Constitution, actionable under 42 U.S.C. § 1983. Defendant Mayfield's actions and omissions constitute a deliberate deprivation of Plaintiff's property interests, proximately causing substantial financial and emotional harm, and warranting compensatory and punitive damages

## VII. History and Judicial Misconduct by Judge Jancha

On April 30, 2024, Plaintiff filed a complaint in Berrien County Court against Thomsen, alleging Thomsen embezzled over $700,000 from the Trust between 2018 and 2023. The complaint was supported by factual evidence including bank statements, credit card records, Berrien County Register of Deeds documents and forensic accounting evidence.

Thomsen, a former beneficiary of the Trust, was removed as beneficiary from the Trust for violating its no-contest clause by challenging Plaintiff's authority as Trustee. Thomsen is currently under investigation by the Michigan Attorney General's Financial Crimes Division for financial elder abuse related to her actions against the Trust and estates. (EX. 2)

**On June 4, 2025**, Judge Jancha conducted a hearing in Berrien County Probate Court where he:

1. Disregarded medical records from David Ahonen's physician, dated March 2021, diagnosing him with advanced dementia, rendering him incompetent to amend the Trust or make any financial decisions after that date.

2. Accepted Drew's motions which included fraudulent affidavits from Thomsen and Richard Ahonen falsely stating that **David Ahonen was competent in November 2023** to justify Thomsen's embezzlement of Trust assets and purchase properties with the embezzled Trust assets.

3. Accepted Drew's motion containing a fraudulent CPA report to justify Thomsen's embezzlement.

4. Accepted Drews statement to remove Plaintiff as Trustee without a formal motion, evidence, or notice, and agreeing with Drew's unsubstantiated oral statement  that "vexatious litigation" is the basis for removal of Pamela as Trustee, and ignoring the spendthrift provision that prevents any change and ignoring the fact that the Trust is protected by the US and Michigan Constitutions Article 1, Section 10.

5. Accepted Drew's statement to appoint Thomsen as Trustee despite her lack of legal standing, her removal as beneficiary for violation to the no contest clause of the Trust, and her documented criminal conduct which is under investigation (EX 5), and

14

denied Plaintiff's objections and the Trusts spendthrift provisions that prevents the appointment and that clearly show the court's lack of jurisdiction.

**On July 15, 2025, Judge Jancha, issued sixteen (16) orders that constitute a pattern of egregious judicial misconduct (EX 8),** designed to unlawfully deprive Pamela Howe, as Trustee and beneficiary of the Trust, of her constitutional and equitable rights. These orders, executed without jurisdiction, in violation of the Trust's provisions, and in furtherance of a fraudulent scheme to acquire Trust property at 106 Court Street for Master Plan parking garage for the courthouse, violated Plaintiff's rights under First, Fifth, and Fourteenth Amendments of the U.S. Constitution. Jancha's actions, demonstrate a deliberate abuse of judicial authority and collusion with Drew, Young, and Thomsen to facilitate municipal enrichment at the expense of Plaintiff's Trust assets. (See Drew's 7/10/25 Response in EX 9).

1. **Unlawful Removal of Pamela Howe as Trustee:**

   Jancha's removing Plaintiff as Trustee of the Trust was issued absent any motion from an interested party, without evidentiary support, and in direct violation of the Trust's spendthrift provision, which prohibits interference with Trust administration by external parties. This action constitutes a gross abuse of judicial power and a violation of Plaintiff's due process rights under the Fourteenth Amendment, as "the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner" (*Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). By removing Plaintiff without legal basis, Jancha impaired the Trust's contractual obligations, violating Article I, Section 10 of the U.S. Constitution, which prohibits any state from passing a law "impairing the Obligation of Contracts" (*Fletcher v. Peck*, 10 U.S. 87, 139 (1810)).

2. **Fraudulent Appointment of Julie Thomsen as Trustee:**

   Jancha's appointment of Thomsen as Trustee was patently unlawful, contravening the Trust's spendthrift provision and no-contest clause, which explicitly revoke the rights of any beneficiary who challenges Trust provisions. Thomsen, previously removed as a beneficiary for violating the no-contest clause and currently under investigation by the Michigan Attorney General's Financial Crimes Division for documented criminal conduct (EX 5), lacked any legal standing to serve as Trustee. Jancha's order, issued with

knowledge of Thomsen's forfeiture under MCL 700.2803, constitutes a fraudulent act that facilitated the misappropriation of Trust assets, including 106 Court Street. This action violated Plaintiff's property rights under the Fifth Amendment, as "the Takings Clause prohibits the government from taking private property for public use without just compensation" (*Kelo v. City of New London*, 545 U.S. 469, 477 (2005)) and furthered the Master Plan's scheme for municipal gain. (See Drew's July 10, 2025 Response in EX 9).

3. **Denial of Motion for Change of Venue:**
   Jancha denied Plaintiff's motion for a change of venue to a neutral jurisdiction, despite Plaintiff's substantiated claims of bias in Berrien County due to the court's alignment with the Master Plan to acquire 106 Court Street. This denial, coupled with Jancha's violation of the Trust's spendthrift and no-contest clauses, obstructed Plaintiff's ability to recover Trust assets and protect 106 Court Street from municipal acquisition. By refusing a fair and impartial forum, Jancha violated Plaintiff's Fourteenth Amendment right to equal protection, as "the Equal Protection Clause requires the State to provide equal access to its courts without discrimination" (*Griffin v. Illinois*, 351 U.S. 12, 17 (1956)). This action perpetuated a biased judicial process, enabling the fraudulent scheme to seize Trust property.

4. **Denial of Motion to Compel Payment of Property Taxes:**
   Jancha's denial of Plaintiff's motion to compel Thomsen to pay property taxes on Trust assets, including 106 Court Street, which Thomsen neglected, exposed Trust properties to the risk of tax foreclosure. This deliberate inaction facilitated financial distress on Trust assets, aligning with the Master Plan's objective to acquire 106 Court Street for the courthouse parking garage. Jancha's refusal to enforce Thomsen's obligations as a fiduciary violated Plaintiff's due process rights, as "the State may not deprive a person of property without due process of law" (*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985)). This conduct constitutes a direct contribution to the fraudulent scheme to misappropriate Trust property.

16

5. **Denial of Motion to Remove Fraudulent Attorney Charging Lien:**

Jancha denied Plaintiff's motion to remove a fraudulent attorney charging lien filed by Mowitt S. Drew and Young, who claimed fees from Trust assets without Trust's approval and the Trust is not their client. This lein, imposed by uninterested parties, was a collusive tactic to encumber Trust properties, including 106 Court Street, and place them in financial distress to facilitate municipal acquisition. Jancha's refusal to strike the lien rewarded Drew and Young's unethical conduct, violating the equitable principle that "equity will not allow a wrongdoer to profit by a wrong" (*Hack v. Concrete Wall Co.*, 350 Mich. 118, 127 (1957)). This action further violated Plaintiff's Fifth Amendment property rights by enabling an unauthorized encumbrance on Trust assets.

6. **Falsely Marking Objections as "HEARD" on the Register of Actions:**

Jancha falsely marked Plaintiff's written objections to these orders as "HEARD" on the docket, despite refusing to address them during proceedings. This deceptive practice was designed to clear the court docket, deny Plaintiff due process, and expedite the fraudulent acquisition of 106 Court Street for the Master Plan's courthouse parking garage. By suppressing Plaintiff's objections without a hearing, Jancha violated her First Amendment right to petition the government for redress, as "the right to petition protects the right to access the courts without fear of interference" (*Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387 (2011)). This misconduct also constitutes a violation of due process under the Fourteenth Amendment, as "due process requires a fair hearing before an impartial tribunal" (*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876 (2009)).

7. **Collusion with Drew and Young in Fraudulent Scheme:**

Judge Jancha, in a deliberate and reprehensible abuse of judicial authority, actively conspired with attorneys. Drew and Young, acting as counsel for Thomsen, to perpetrate a fraudulent scheme aimed at unlawfully acquiring Trust property at 106 Court Street for the Berrien County Courthouse's parking garage, as outlined in the Master Plan. Drew and Young knowingly submitted fraudulent affidavits and motions, including a fabricated claim asserting David Ahonen's competence in November 2023, which directly contradicted irrefutable medical evidence establishing his incompetence. Jancha, with

reckless disregard for his judicial duty, accepted these fraudulent documents without scrutiny and issued baseless orders, including the unlawful removal of Plaintiff Pamela Ruth Howe as Trustee and the fraudulent appointment of Thomsen as Trustee, despite her disqualification under MCL 700.2803 for criminal conduct under investigation (EX 5). This collusion, designed to conceal the Master Plan and obstruct Plaintiff's recovery of Trust assets, constitutes a flagrant violation of Plaintiff's rights under 42 U.S.C. § 1983, which provides relief for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" (*Green v. Mansour*, 474 U.S. 64, 68 (1985)). Jancha's complicity in this scheme strips him of judicial immunity, rendering him personally liable under *Ex parte Young*, 209 U.S. 123, 159 (1908), which holds that a state officer acting in violation of the Constitution "is stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." Furthermore, Jancha's acceptance of fraudulent submissions violates the equitable principle that "courts of equity will not permit one to profit by his own fraud" (*Campau v. Van Dyke*, 15 Mich. 371, 380 (1867)).

8. **Furthering the Fraudulent Scheme to Acquire 106 Court Street:**
   Jancha's collective actions—including the unlawful removal of Plaintiff as Trustee, the fraudulent appointment of Thomsen, denial of critical motions, falsification of docket entries by marking Plaintiff's objections as "HEARD" without addressing them, and denying Plaintiff a fair opportunity to be heard—demonstrate a calculated and malevolent intent to facilitate the Master Plan's scheme to misappropriate 106 Court Street for the courthouse parking garage. These actions, executed under color of state law, constitute a direct assault on Plaintiff's constitutional protections, violating her First Amendment right to petition the government for redress, as "the right to petition protects the right to access the courts without fear of interference" (*Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387 (2011)), and her Fourteenth Amendment due process rights, as "due process requires a fair hearing before an impartial tribunal" (*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876 (2009)). Jancha's conduct further violated Plaintiff's Fifth Amendment property rights by enabling the unlawful encumbrance and potential seizure of Trust

18

assets without just compensation (*Kelo v. City of New London*, 545 U.S. 469, 477 (2005)). By breaching his oath of office and acting in concert with Drew and Young to advance municipal interests, Jancha incurred personal liability under *Ex parte Young*, 209 U.S. 123, 159 (1908), and violated 42 U.S.C. § 1983, causing irreparable harm to the Trust, its assets, and Plaintiff as Trustee and sole beneficiary. Plaintiff seeks declaratory and injunctive relief to nullify Jancha's orders, restore her as Trustee, and protect Trust assets, including 106 Court Street, along with compensatory and punitive damages for Jancha's egregious misconduct.

## VIII. Misconduct by Thaddeus Hackworth

**Thaddeus Hackworth's** representation of Judge Jancha in the 2025 Writ of Mandamus case (Court of Appeals No. 375572), coupled with his marital relationship to Emily Hackworth, the City of St. Joseph's City Manager overseeing the Master Plan, constitutes compelling evidence of a deliberate and illicit conspiracy to deprive Plaintiff of her constitutional rights and Trust property for municipal enrichment through the parking garage for the courthouse. Hackworth, acting as counsel for Judge Jancha, filed an Answer dated June 20, 2025, to Plaintiff's Writ of Mandamus, which sought to protect Trust assets, including the property at 106 Court Street. In this Answer, Hackworth brazenly **dismissed Plaintiff's substantiated allegations** concerning Trust ownership of properties, Thomsen's embezzlement of Trust assets to acquire properties, unpaid back taxes, an unauthorized attorney charging lien, constructive trust and related matters, callously asserting that these claims were "immaterial" to the facts against Judge Jancha and **summarily denying them**. In his Affirmative Defenses, Hackworth audaciously demanded **dismissal of the complaint as moot** and sought a judgment of **no cause of action in favor of Judge Jancha**, along with **costs and attorney fees against Plaintiff to further harm Plaintiff.** Hackworth's willful failure to advocate for the protection of Trust assets, his refusal to address Judge Jancha's egregious judicial misconduct, and his active concealment of the Master Plan targeting 106 Court Street for a parking garage project for the courthouse demonstrate his complicity in a fraudulent scheme to perpetuate the unlawful deprivation of Plaintiff's rights and property, in flagrant violation of his ethical and legal duties as Berrien County corporate counsel.

19

## IX. Judicial Misconduct by Hosbein

1. **Gordon Hosbein**, presiding over the Berrien County Probate Court in the cases from January to November 2024, has engaged in a pattern of egregious judicial misconduct that facilitated a fraudulent scheme to deprive Plaintiff, as Trustee of the Trust and Personal Representative of the estates, of her constitutional and equitable rights. Hosbein's actions, including ordering unnecessary mediation in the deceased estates by claiming they are necessary prior to litigating the Trust, and ignoring the Personal Representative's Motions and claims for recovery of assets, disregarding Thomsen's fraudulent petitions, from Thomsen who has no standing, ignoring Thomsen's Prudential life insurance fraud of changing beneficiaries to herself as "sole beneficiary", delaying default judgment, delaying all recovery of Trust and estate assets, and unlawfully removing a lis pendens on a property purchased with Trust assets, constitute a **deliberate abuse of judicial authority** and a violation of Plaintiff's rights under the U.S. Constitution and Michigan law. These actions furthered a scheme aligned with the Master Plan to unlawfully acquire Trust property at 106 Court Street for a parking garage to benefit the Berrien County Courthouse.

2. **Ordering Mediation to Facilitate Vexatious Litigation:**
Hosbein's order for mediation, as addressed in Plaintiff's Objection to Motion for Court to Appoint a Mediator, constitutes a bad-faith effort to prolong litigation and obstruct justice. Despite Thomsen's lack of standing as a beneficiary under MCL 700.2803 due to her financial exploitation of the David and Ruth Ahonen which is under investigation by the State of Michigan Attorney General, Hosbein ordered mediation without addressing her forfeiture of rights. This action violated Plaintiff's due process rights under the Fourteenth Amendment by imposing unnecessary delays and costs, as "due process requires that the procedures by which laws are applied must be evenhanded, so that individuals are not subjected to the arbitrary exercise of government power" (*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). Hosbein's orders furthered vexatious litigation, enabling Drew and Young to cause vexatious litigation and harass Plaintiff for Butzel Long's financial gain, in violation of the equitable principle that "equity will not suffer a wrong to be without a remedy" (*Hack v. Concrete Wall Co.*, 350 Mich. 118, 127 (1957)).

20

3. **Ignoring Thomsen's Fraudulent Petition to Remove Plaintiff as Personal Representative:**

Hosbein willfully accepted Thomsen's baseless Petition for Removal of Personal Representative and Appointment of Successor (filed April 30, 2024), despite her fraudulent documents, financial crimes and lack of standing under MCL 700.2803, which **revokes all rights of a felon convicted of abuse, neglect, or exploitation.** Thomsen's removal as a beneficiary rendered her petition fraudulent, yet Hosbein failed to dismiss it. This inaction constitutes a violation of Plaintiff's right to due process under the Fourteenth Amendment, as "the State may not deprive a person of life, liberty, or property without due process of law" (*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985)). By allowing Thomsen's meritless petition to persist, and acting in collusion with Drew and Young, Hosbein facilitated a scheme to undermine Plaintiff's authority as Trustee and Personal Representative to recover Trust and estate assets, aligning with the Master Plan to obtain 106 Court Street, a Trust asset, for the City of St. Joseph and the Berrien County Courthouse's gain.

4. **Ignoring Thomsen's Insurance Fraud Involving Prudential Life Insurance Policy:**

Hosbein deliberately ignored evidence of Thomsen's insurance fraud related to the Prudential life insurance policy of David Ahonen, when she fraudulently changed the beneficiary from the Trust to herself as "sole beneficiary" while David Ahonen was incompetent and on hospice. Further the Prudential life insurance policy is an asset of the Trust. Thomsen's attempt to divert Trust assets, including life insurance proceeds to herself, constituted fraud. Hosbein's failure to address this misconduct, his failure to order discovery and the recovery of estate and Trust assets violated Plaintiff's right to property. This inaction caused vexatious litigation furthering the fraudulent scheme in the Master Plan involving the Trust asset, 106 Court Street, for the development of a parking garage for the courthouse.

5.**Delaying Default Judgment Despite Filed MC07 Form:**

Hosbein's refusal to grant Plaintiff's Motion for Default Judgment despite the clerk-signed MC07 default form, factual evidence and Thomsen's failure to respond to the complaint within 28 days under MCR 2.603(A)(1), represents a deliberate obstruction of justice. Thomsen's failure to plead or defend the evidence included in the complaint, warranted immediate judgment, as "once a defendant fails to file a responsive answer, he is in default" (*Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980)). Hosbein's delay violated Plaintiff's right to a speedy resolution under the Sixth Amendment, as prolonged litigation without justification undermines the "prompt and efficient administration of justice" (*Barker v. Wingo*, 407 U.S. 514, 521 (1972)). This delay enabled Defendants Drew and Young to perpetuate vexatious litigation for their unjust enrichment, furthering the scheme to acquire 106 Court Street.

6.**Unlawful Removal of Lis Pendens on Sawyer, Michigan Property:**

In November 2024, Hosbein issued an order removing the lis pendens on the Trust-owned property at 12260 Flynn Road, Sawyer, Michigan. This action, taken without jurisdiction and in defiance of the Trust's ownership rights (evidenced by the Notice of Lis Pendens filed March 5, 2024 in the Berrien County Register of Deeds), facilitated Thomsen's fraudulent attempt to sell the property. Hosbein's order, through collusion with Drew and Young, was unconstitutional and fraudulent. Furthermore, this act violated the Trust's spendthrift provision and Article I, Section 10 of the U.S. Constitution, which prohibits the impairment of contracts, as "no State shall pass any Law impairing the Obligation of Contracts" (*Fletcher v. Peck*, 10 U.S. 87, 139 (1810)). Hosbein's order for the removal of the lis pendens on property owned by the Trust, allowing the potential sale of the Sawyer property, and divert the profits from the sale to Buzel Long for payment, for the purpose of continuing the vexatious litigation in the furtherance of the scheme to obtain the 106 Court Street Property for the parking garage for the courthouse.

7.**Judge Hosbein left the bench:** On the day the order to remove the lis pendens was issued, Judge Hosbein left the bench abruptly, with no official written documentation

with explanation or advance notice of his departure. This sudden exit raised further questions regarding his motives and the improper nature of leaving the cases with no explanation. In January 2025, The Estate's Trust cases were transferred to District Court Judge Jancha, a new judge, without written official notice or any explanation as to why a district court judge was now presiding over the probate cases.

8. **It appears that Chief Judge Mayfield coordinated this abrupt judicial reassignment,** yet Pamela was never provided with any official explanation or formal written notice regarding the reasons behind these sudden and irregular changes in judges over the cases. As of now, Pamela remains without any clarity regarding Judge Hosbein's unexplained departure, leaving her with reasonable doubts about the integrity of the judicial process and the motivations behind the actions, including the Master Plan involving 106 Court Street development of a parking garage for the courthouse.


9. **Hosbein's Conduct Furthering the Fraudulent, Aligned with the Master Plan:**
Hosbein's cumulative actions—delaying hearings, ignoring Thomsen's lack of standing, accepting Thomsen's fraudulent petitions without standing, denying Plaintiff's evidence and default judgment, ordering removal of lis pendens, and facilitating fraudulent property sales—demonstrate complicity in a scheme to unlawfully acquire 106 Court Street for the Master Plan parking garage. This conduct violated Plaintiff's First Amendment right to petition the government for redress, as "the right to petition protects the right to access the courts without fear of interference" (*Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387 (2011)). Hosbein's concealment of the Master Plan involving 106 Court Street and enabling Drew and Young's vexatious litigation and Thomsen's fraudulent actions, Hosbein acted under color of state law to deprive Plaintiff of her property rights, in violation of 42 U.S.C. § 1983, which provides relief for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" (*Green v. Mansour*, 474 U.S. 64, 68 (1985)).

**10. Gordon Hosbein's Failure to Provide Delegation of Authority:**

The Averment of Quo Warranto (dated November 8, 2024), Notice of Liability (dated December 9, 2024), Notice of Default (dated December 20, 2024) were mailed via certified mail to Hosbein however he failed to answer and failed to provide his Delegation of Authority through these requests. This refusal by Hosbein constitutes an admission of acting without jurisdiction, as "an unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office" (*Norton v. Shelby County*, 118 U.S. 425, 439 (1886)). Further, Chief Judge Mabel Mayfield received these requests for Hosbein but failed to respond or acknowledge the notices. Hosbein's actions as a state officer, including orders the removal of the lis pendens and delays in adjudication, are void ab initio, rendering him personally liable for damages under *Ex parte Young*, 209 U.S. 123, 159 (1908), which holds that a state officer acting in violation of the Constitution "is stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct."

**11. Judge Hosbein's unethical conduct without jurisdiction**—coupled with his collusion with Butzel Long and other parties— and the concealment of the Master Plan to develop a parking garage for the courthouse on 106 Court Street, which is Trust property, constitutes a serious breach of judicial ethics and due process. They reflect a deliberate attempt to undermine the interests of Plaintiff and the rightful beneficiaries of the Trust and warrant immediate and thorough investigation by the appropriate authorities.

**12. Judge Hosbein's actions represent a flagrant abuse of judicial power,** perpetuating a fraudulent scheme to misappropriate Trust property in violation of Plaintiff's constitutional rights under the First, Fifth, Sixth, and Fourteenth Amendments, as well as Michigan law. Plaintiff seeks declaratory relief, injunctive relief to restore the lis pendens and recovery of Trust and estate assets, compensatory and punitive damages, and all equitable remedies available to redress these violations. Additionally, Chief Judge Mabel Mayfield allowance of fraudulent conduct without jurisdiction is egregious and treasonous.

24

## X. Judicial Misconduct by Chief Judge Mabel Mayfield

1. **Mabel Mayfield,** as Chief Judge of the Berrien County Court, was vested with the paramount authority and duty to oversee judicial proceedings and rectify instances of judicial misconduct. Despite this solemn obligation, Mayfield knowingly and willfully failed to intervene, despite her full awareness of the City of St. Joseph's Downtown Vision Master Plan, which designated 106 Court Street—a property wholly owned by the Trust -for the development of a parking garage to serve the Berrien County Courthouse. Mayfield's deliberate concealment of this material conflict of interest since April 30, 2024, and her persistent refusal to respond to Plaintiff's multiple notices and motions requesting proof of jurisdiction and a hearing in exclusive equity for equitable remedy, constitute a gross dereliction of judicial duty, perpetuating a fraudulent scheme to deprive Plaintiff of her constitutional and equitable rights. These actions facilitated vexatious litigation, obstructed the recovery of Trust and estate assets, and violated Plaintiff's rights under the First, Fifth, and Fourteenth Amendments of the U.S. Constitution, as well as Michigan law.

2. **Chief Judge Mabel Mayfield's Concealment of Master Plan and Conflict of Interest:** Mayfield, fully cognizant of the Master Plan targeting 106 Court Street for municipal gain, intentionally withheld this critical information from Plaintiff, thereby perpetuating a blatant conflict of interest. This concealment, ongoing since April 30, 20254, enabled a scheme involving all defendants to attempt to unlawfully acquire Trust property at 106 Court Street, violating Plaintiff's due process rights under the Fourteenth Amendment, which mandates that "no State shall deprive any person of life, liberty, or property, without due process of law" (*Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). Mayfield's failure to disclose the Master Plan constitutes an abuse of judicial authority, as "equity will not suffer a wrong to be without a remedy" (*Hack v. Concrete Wall Co.*, 350 Mich. 118, 127 (1957)).

**3.Chief Judge Mabel Mayfield's Failure to Respond to Notices and Demands for Proof of Jurisdiction:**

Mayfield received multiple notices and motions from Plaintiff, all of which she deliberately ignored, thereby obstructing Plaintiff's access to justice and perpetuating judicial misconduct:

1) Averment of Jurisdiction Quo Warranto (November 8, 2024) was Mailed via certified mail to Judge Gordon G. Hosbein with a copy to Mayfield, demanding written proof of Hosbein's delegated authority. Mayfield's failure to respond or compel Hosbein to provide such proof constitutes an admission of lack of jurisdiction, as "an unconstitutional act is not a law; it confers no rights; it imposes no duties; it creates no office" (*Norton v. Shelby County*, 118 U.S. 425, 439 (1886)).

2) Notice of Liability (December 9, 2024) Demanded Hosbein's delegation of authority to administer the PAMELA RUTH HOWE ESTATE. Mayfield, aware of Hosbein's non-response, failed to intervene, further enabling unauthorized judicial actions.

3) Notice of Default (December 20, 2024) Notified Hosbein of his default for failing to provide jurisdictional authority, with a copy to Mayfield. Her inaction ratified Hosbein's lack of jurisdiction, violating Plaintiff's right to due process.

4) Averment of Jurisdiction to Judge Paul S. Jancha (May 19, 2025) was Mailed via certified mail with a copy to Mayfield, demanding Jancha's proof of delegated authority. The mailing to Jancha was returned on May 31, 2025 by the clerk Jessica Brown, yet Mayfield neither responded nor required Jancha to provide proof, further obstructing Plaintiff's rights.

5)  Notice from Office of Executor (June 16, 2025) Demanded a full accounting of
    assets, debts, or claims related to the estate, PAMELA RUTH HOWE. Mayfield's
    failure to respond violated Plaintiff's First Amendment right to petition for
    redress, as "the right to petition protects the right to access the courts without fear
    of interference" (*Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387 (2011)).

6)  Motion for Disqualification to Recuse Jancha (filed June 16, 2025) was Filed with
    the court in all cases and a copy provided to Mayfield, who failed to respond or
    act, allowing Jancha's unauthorized oversight of probate cases to persist.

7)  Special Petition for Ex Parte Evidentiary Hearing (filed July 7, 2025) Requested
    an in-camera hearing and equitable relief for Trust and estate assets, including 106
    Court Street. Mayfield's non-response obstructed Plaintiff's equitable remedies.

8)  Petition for Protective Order (filed July 7, 2025) Sought to protect Trust and estate
    assets, including 106 Court Street. Mayfield's failure to schedule a hearing
    perpetuated harm to Plaintiff's property rights.

9)  Petition for Payment and Exclusive Equity Hearing (filed July 7, 2025) Included
    an Affidavit of Status of Pamela Ruth Howe and Notice of Liability for
    jurisdictional violations and harm caused to estate and Trust assets, including 106
    Court Street. Mayfield's refusal to respond or act constitutes a deliberate
    obstruction of justice.

**4.Orchestrating Improper Judicial Reassignment:**

In December 2024, Mayfield orchestrated the abrupt removal of Judge Hosbein from the
probate cases and, in January 2025, reassigned Judge Paul S. Jancha—a district court

27

judge—without providing Plaintiff with written notice or explanation. This irregular reassignment, lacking transparency or justification, suggests Mayfield's complicity in covering up Hosbein's lack of jurisdiction and perpetuating the fraudulent scheme to acquire 106 Court Street. Such actions violate Plaintiff's due process rights, as "the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner" (*Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). Mayfield's failure to provide notice or rationale for the reassignment further infringes on Plaintiff's First Amendment right to access the courts (*Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387 (2011)). Upon information and belief, Plaintiff believe that the timing of the Adverment of Quo Warranto in November 2024 related to the abrupt removal of Hosbein from the cases.

**5.Perpetuating Vexatious Litigation and Obstructing Recovery:**

Mayfield's deliberate inaction permitted vexatious litigation to persist for over a year, obstructing Plaintiff's lawful recovery of Trust and estate assets, including 106 Court Street. By failing to supervise Hosbein and Jancha, Mayfield enabled their unauthorized actions, including Hosbein's unlawful removal of the lis pendens on Trust property at 12260 Flynn Road, Sawyer, Michigan, and Jancha's fraudulent oversight of probate cases. This conduct constitutes a violation of Plaintiff's Fifth Amendment property rights, as "the Takings Clause prohibits the government from taking private property for public use without just compensation" (*Kelo v. City of New London*, 545 U.S. 469, 477 (2005)). Mayfield's complicity in the Master Plan scheme aligns with municipal interests to acquire 106 Court Street for a parking garage, violating the equitable principle that "equity will not allow a wrongdoer to profit by a wrong" (*Hack v. Concrete Wall Co.*, 350 Mich. 118, 127 (1957)).

6. **Personal Liability for Constitutional Violations:**

Mayfield's failure to respond to Plaintiff's notices and motions, combined with her knowledge of Hosbein's and Jancha's lack of jurisdiction, renders her personally liable under *Ex parte Young*, 209 U.S. 123, 159 (1908), which holds that a state officer acting in violation of the Constitution "is stripped of his official or representative character and is

subjected in his person to the consequences of his individual conduct." Her actions, taken
under color of state law, violated Plaintiff's rights under 42 U.S.C. § 1983, which
provides relief for "the deprivation of any rights, privileges, or immunities secured by the
Constitution and laws" (*Green v. Mansour*, 474 U.S. 64, 68 (1985)).

7. **Chief Judge Mabel Mayfield's** deliberate inaction, concealment of the Master Plan, and
failure to supervise judicial misconduct constitute a flagrant abuse of judicial authority,
perpetuating a fraudulent scheme to misappropriate Trust property at 106 Court Street.
These actions violated Plaintiff's constitutional rights under the First, Fifth, and
Fourteenth Amendments, as well as Michigan law. Plaintiff seeks declaratory and
injunctive relief, compensatory and punitive damages, and all equitable remedies to
restore Trust assets and redress these violations.

## XI. Misconduct by Drew and Young

Defendants Drew and Young, acting as counsel for Thomsen, conspired with Judge Jancha and
Judge Hosbein in a deliberate and egregious scheme to perpetrate fraud, cause vexatious
litigation, and unlawfully deprive Plaintiff Pamela Ruth Howe, as Trustee and sole beneficiary of
the Trust and as Executor and Personal Representative of the estates, of her constitutional and
equitable rights to recover the Trust and estate assets. This collusion facilitated the fraudulent
scheme to acquire the Trust property at 106 Court Street for the Berrien County Courthouse
parking garage, as outlined in the Master Plan, in which Drew and Young's law firm, Butzel
Long, located across the street from 106 Court Street, stands to gain financially due to enhanced
accessibility to the court for themselves and their clients—a blatant conflict of interest. With full
knowledge of Thomsen's ongoing investigation by the Michigan Attorney General's Financial
Crimes Division for documented criminal conduct (EX. 5), Drew and Young aided and abetted
Thomsen's fraud for over a year, submitting fraudulent affidavits and CPA reports, procuring
baseless judicial orders, placing their client in severe financial distress, and obstructing
Plaintiff's recovery of Trust and Estate assets. These actions, in concert with Jancha and
Hosbein's judicial misconduct, violated Plaintiff's rights under the First, Fifth, and Fourteenth

29

Amendments of the U.S. Constitution, as well as 42 U.S.C. § 1983, and constitute a pattern of racketeering activity under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968.

1. **Collusive Scheme to Facilitate Vexatious Litigation for Profit:**

   Drew and Young, in collusion with Judge Jancha and Judge Hosbein, orchestrated a campaign of vexatious litigation to harass Plaintiff and unjustly enrich themselves through fraudulent legal fees, as evidenced by their imposition of an unauthorized attorney charging lien on Trust assets without Trust approval or contractual basis with the Trust, who is NOT a client of Butzel Long PC. Their actions, including filing baseless motions and fraudulent affidavits, such as the fabricated claim of David Ahonen's competence in November 2023 despite medical evidence of his incompetence and dementia diagnosis in March 2021, were designed to prolong litigation and encumber Trust assets, including 106 Court Street, to facilitate its acquisition for the Master Plan for the parking garage for the courthouse. This conduct constitutes mail and wire fraud (18 U.S.C. §§ 1341, 1343), predicate acts under RICO (*H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 241–42 (1989) ("a party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates")). By profiting from this scheme, Drew and Young violated the equitable principle that "courts of equity will not permit one to profit by his own fraud" (*Campau v. Van Dyke*, 15 Mich. 371, 380 (1867)), causing irreparable harm to Plaintiff's property rights.

2. **Acceptance of Fraudulent Affidavits and CPA Reports:**

   Drew and Young knowingly submitted motions with fraudulent affidavits by Thomsen and false CPA reports to the Berrien County Probate Court, falsely asserting David Ahonen's competence in 2023, in direct contradiction to medical evidence, to justify Thomsen's fraudulent actions and challenge Plaintiff's authority as Trustee. Judges Jancha acting in collusion, accepted Drew and Youngs fraudulent documents without scrutiny, issuing orders to remove Pamela Howe as Trustee and appoint Thomsen, despite her disqualification under MCL 700.2803 for financial crimes under investigation. This was done to gain access to the Trust and further the scheme to obtain 106 Court Street. This acceptance of Drew and Young's fraudulent submissions constitutes a deliberate

30

deprivation of Plaintiff's due process rights under the Fourteenth Amendment, as "due process requires a fair hearing before an impartial tribunal" (*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876 (2009)), and facilitated the misappropriation of Trust assets, including 106 Court Street, for the courthouse parking garage.

3. **Unlawful Removal of Lis Pendens and Appointment of Thomsen:**

   Drew and Young's collusion with Judge Hosbein regarding the order in November 2024, removing the lis pendens on Trust property at 12260 Flynn Road, Sawyer, Michigan, and Judge Jancha's attempt on July 15, 2025, to remove Plaintiff as Trustee and appointing Thomsen, were procured through Drew and Young's fraudulent motions and executed without jurisdiction. These actions violated the Trust's spendthrift and no-contest clauses, which bar Thomsen's involvement due to her beneficiary status revocation and criminal investigation. The removal of the lis pendens on property owned by the Trust and appointment of Thomsen were designed to enable the sale of Trust properties, including 106 Court Street, and divert proceeds to further the Master Plan's scheme, violating Plaintiff's Fifth Amendment property rights, as "the Takings Clause prohibits the government from taking private property for public use without just compensation" (*Kelo v. City of New London*, 545 U.S. 469, 477 (2005)). Jas state actors, Jancha, Hosbein, Drew and Young's complicity in these acts renders them personally liable under *Ex parte Young*, 209 U.S. 123, 159 (1908) ("a state officer acting in violation of the Constitution is stripped of his official or representative character").

4. **Imposition of Fraudulent Attorney Charging Lien:**

   Drew and Young, with Jancha's acquiescence, imposed a fraudulent attorney charging lien on Trust assets (the properties, including 106 Court Street), claiming fees with no approval by the Trust or contractual basis with the Trust, as part of their collusive scheme to encumber Trust properties and facilitate their acquisition by Berrien County. Jancha's denial of Plaintiff's motion to remove this attorney charging lien on July 15, 2025, rewarded Drew and Young's unethical conduct, violating Plaintiff's due process rights and the equitable principle that "equity will not allow a wrongdoer to profit by a wrong" (*Hack v. Concrete Wall Co.*, 350 Mich. 118, 127 (1957)). This lien, intended to

cause financial distress to Trust assets like 106 Court Street, constitutes extortion, a RICO predicate act (*H.J., Inc.*, 492 U.S. at 239).

5. **Dismissal of Plaintiff's Motions as Moot and Denial of Constitutional Protections:** On July 15, 2025, Jancha, influenced by Young's false statements, denied Plaintiff's motions, including the motion to compel Thomsen to pay property taxes on Trust assets (risking tax foreclosure on all properties, including 106 Court Street) and to remove the fraudulent attorney charging lien, and by falsely marking Plaintiff's objections as "HEARD" on the docket preventing plaintiff's objections from being heard.

6. **Filing of Baseless Lawsuit and Failure to File Notice of Appearance:** Drew and Young filed a frivolous lawsuit against Plaintiff in Case No. 2025-0159-CZ is meritless and is further evidence of harassment on Pamela Howe and to cause vexatious litigation to drain Trust resources and obstruct her fiduciary duties. Additionally, their **failure to file a notice of appearance for Thomsen Holdings LLC** in Case No. 2024-0809-CZ for over a year, constitutes a procedural violation under MCR 2.117, designed to obscure Thomsen's lack of standing and perpetuate the fraudulent scheme. These actions, along with Jancha and Hosbein's dismissal of the fact that no notice of appearance has been filed, is further evidence of collusion to violate Plaintiff's due process rights and constitute additional predicate acts of fraud under RICO (*United States v. Conahan*, No. 3:09-CR-272 (M.D. Pa. 2009) (judicial collusion in fraudulent scheme constituted RICO violations)).

7. **Motion for Sanctions Against Plaintiff:** Drew and Young's motion for sanctions against Plaintiff, filed to intimidate and harass and cause further vexatious litigation, was a collusive tactic to deter Plaintiff from asserting her constitutional and fiduciary rights. Jancha's failure to reject this baseless motion exacerbated the harm to Plaintiff, violating her First Amendment right to access the courts without interference (*Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387 (2011)). This conduct furthered the pattern of racketeering activity aimed at financially crippling Plaintiff and facilitating the acquisition of 106 Court Street.

8. **Knowledge of Thomsen's Criminal Investigation and Conflict of Interest:**

   Drew and Young, fully aware of Thomsen's investigation by the Michigan Attorney
   General for financial crimes (EX. 5), continued to aid and abet her fraudulent actions for
   over a year, including submitting false affidavits and procuring unlawful judicial orders.
   Their law firm, Butzel Long, located directly across from 106 Court Street, stands to gain
   financially from the proposed parking garage to be built on property owned by the Trust,
   creating a clear conflict of interest that they concealed from Plaintiff. This conflict,
   combined with their collusion with Jancha and Hosbein, who also knew of the Master
   Plan, constitutes a deliberate scheme to misappropriate Trust property for municipal and
   personal gain, violating Plaintiff's Fifth and Fourteenth Amendment rights (*Kelo v. City
   of New London*, 545 U.S. 469, 477 (2005)). Their actions align with the *Kids for Cash*
   scandal, where judicial collusion for institutional benefit constituted RICO violations
   (*United States v. Conahan*, No. 3:09-CR-272 (M.D. Pa. 2009)).

9. **Constitutional Violations and RICO Enterprise:**

   The collusive actions of Drew, Young, Jancha, Hosbein, Mayfield and Hackworth form a
   RICO enterprise under 18 U.S.C. § 1961(4), with a common purpose of defrauding
   Plaintiff and acquiring Trust property, 106 Court Street, for the development of a
   courthouse parking garage. Their predicate acts, including mail and wire fraud, extortion,
   and obstruction of justice, caused direct injury to Plaintiff's property and fiduciary rights,
   entitling her to treble damages under 18 U.S.C. § 1964(c) (*Sedima, S.P.R.L. v. Imrex Co.*,
   473 U.S. 479, 496 (1985)). The enterprise's violation of Plaintiff's constitutional rights,
   including her First Amendment right to petition, Fifth Amendment property rights, and
   Fourteenth Amendment due process rights, renders all Defendants liable under 42 U.S.C.
   § 1983 (*Green v. Mansour*, 474 U.S. 64, 68 (1985)). Jancha and Hosbein's lack of
   jurisdiction, as evidenced by Jancha's absent probate oath and Hosbein's failure to
   provide delegation of authority, further voids their actions and subjects them to personal
   liability (*Ex parte Young*, 209 U.S. 123, 159 (1908)).

10. **During the July 15, 2025 hearing, Young said Constitution does not apply:**

    Young argued that Jancha should deny Plaintiff's motion to disqualify him, stating, "this
    is state court and not a federal court, so **Article III of the Constitution does not apply,**

33

and **Michigan statutes and court rules apply here**… litigants receive decisions they don't like, but that doesn't create the basis for disqualification."

Plaintiff responded to Young, stating, **"the U.S. Constitution is the supreme law of the land, and you cannot dismiss constitutional rights… Article III does apply here**, and you, Judge, have never proven jurisdiction."

**Jancha's dismissal of Plaintiff's constitutional arguments, stating, "all the orders are signed, and you can appeal to the court of appeals," constitutes a deliberate rejection of the Supremacy Clause (U.S. Const. art. VI, cl. 2)** and Plaintiff's First Amendment right to petition for redress (*Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387 (2011)). This misconduct obstructed Plaintiff's access to justice and facilitated the ongoing scheme to acquire Trust property.

In summary, the collusive enterprise of Drew, Young, Jancha, and Hosbein, driven by their knowledge of the Master Plan and Thomsen's criminal investigation, perpetrated a fraudulent scheme through vexatious litigation, fraudulent filings, and unlawful judicial orders to deprive Plaintiff of Trust assets, including 106 Court Street. Their actions, motivated by Butzel Long's conflict of interest and personal enrichment, violated Plaintiff's constitutional rights and constitute RICO violations. Plaintiff seeks declaratory and injunctive relief to nullify all fraudulent orders, restore Pamela Howe as Trustee, remove Thomsen, strike the attorney charging lien, and protect Trust assets, along with treble damages, compensatory damages, and punitive damages within constitutional limits (*BMW of North America, Inc. v. Gore*, 517 U.S. 559, 580–82 (1996)) for the irreparable harm caused. (See Drew's July 10, 2025 Response in EX 9).

## XII. Thomsen is not an Interested Party and Lacks Standing

Thomsen is not an interested person as she has been removed by the Trusts provisions as beneficiary for violating the no contest clause of the Trust.  Thomsen lacks any enforceable right related to the Estate or Trust. Michigan case law further reinforces this position. In *In re Estate of Jones*, **488 Mich. 1023 (2010)**, the Michigan Supreme Court held that **a person who is not an interested party lacks standing to participate in probate proceedings, therefore Thomsen's lack of standing prohibits her from filing any orders, motions, or petitions.**

Further, Thomsen is NOT **an interested party and has no standing pursuant to the Trust.** **Thomsen has** been removed as a beneficiary due to her fraud and violation of "no contest clause" of the Trust.

1. Thomsen or Richard Ahonen are **NOT INTERESTED PARTIES and have NO STANDING** in this case or any case to present any motions or any proposed orders as a NON INTERESTED PARTY. This is fraud upon the court. See **Trust provision, Section B. PARTIES AND DEFINITIONS**

   **6. INTERESTED PARTIES**

   (b)(2) A Trustee, if then acting in that capacity. A Successor Trustee, if a signatory to this Trust, may have certain limited rights under other provisions of this Trust.

   (c), a **Beneficiary shall not be considered an Interested Party under this Trust unless that Beneficiary is also acting as a Successor Trustee or Trust Advisor.**

2. Thomsen or Ahonen will never be **an INTERESTED PARTIES and has NO STANDING** in this case or any case other than as a tortfeasor. See Trust provision, A. Grants and Reservations, 4. Contingent Beneficiaries states,

   e.    A **Beneficiary,** unless also an Interested Party, **shall not at any time be entitled to notice of, and shall not have the right to contest or initiate,** the actions or matters described in the foregoing subparagraphs which are taken or arise at any time during the term of this Trust.

   **f.** If a Beneficiary, acting directly or through a third party purporting to act for that Beneficiary, **contests, challenges, or takes action in derogation of** or contrary to the limitations prescribed in the foregoing subparagraphs, that **Beneficiary's rights under this Trust shall immediately terminate** and that **Beneficiary's rights to all distributions claimed by that Beneficiary shall lapse as though that Beneficiary had not been named or defined in this Trust.**

   **\*\*Trust provisions removed Thomsen and Ahonen as beneficiaries in August 2024 and filed with this court in August 2024.**

35

3. **THOMSEN and AHONEN ARE NOT INTERESTED PARTIES and have NO STANDING,** due the fact that they have been removed as beneficiaries for violation of the *no contest clause* of the Trust. Further, there is a pending investigation by the Attorney General Financial Crimes Division into Thomsen's financial crimes and financial elder abuse on David and Ruth Ahonen.

For these reasons, **Thomsen and Ahonen are not interested parties and have no standing in these cases**. Thomsen, through her counsel Drew and Young, cannot file any motions, orders or any filings on any of the deceased estate or trust cases. Thomsen's only involvement in the Trust and deceased estates is as tortfeasor and to return the assets, that she embezzled from the Trust and deceased Estates to the Trustee and Executor / Personal Representative of the Estates.

## XIII. Constitutional Violations by State Actors

Defendants, as state actors, violated Plaintiff's constitutional rights through their coordinated scheme. The following caselaw, drawn from *Section 1983 Litigation* (Federal Judicial Center, 3rd Ed.) and other precedent, establishes the framework for these violations:

### A. First Amendment Violation (Right to Petition)

Defendants interfered with Plaintiff's right to petition the government by denying her motions, falsifying docket entries, and concealing the Master Plan. In *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387 (2011), the Supreme Court affirmed that the First Amendment protects access to the courts, and obstructions like those here—such as Jancha's dismissal of Plaintiff's jurisdictional challenge and Mayfield's failure to address misconduct—are actionable under § 1983 (*Section 1983 Litigation*, p. 68). This right was further clarified in *McDonald v. Smith*, 472 U.S. 479, 482 (1985), where the Court emphasized that state actors cannot retaliate against or obstruct lawful petitions for redress, as Defendants did by manipulating judicial proceedings to silence Plaintiff.

### B. Fourth Amendment Violation (Security in Papers and Effects)

Defendants disregarded Plaintiff's Trust documents and Certificate of Live Birth, violating her right to be secure in her papers and effects. *Katz v. United States*, 389 U.S. 347, 351 (1967),

36

established that the Fourth Amendment protects against unreasonable governmental interference with personal papers, a principle reinforced in *Section 1983 Litigation* at 61–62. Here, Jancha and Hosbein's refusal to recognize Plaintiff's legal documents as Trustee, coupled with their fraudulent orders, constitutes an unconstitutional intrusion. Additionally, *Payton v. New York*, 445 U.S. 573, 587 (1980), underscores that state actors must respect property interests, which Defendants violated by undermining Plaintiff's documented rights to the Trust.

## C. Fifth Amendment Violation (Due Process and Takings)

The fraudulent removal of Plaintiff as Trustee and the scheme to seize 106 Court Street without compensation violate due process and the Takings Clause. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), mandates procedural safeguards—notice and a hearing—before property deprivation, which Defendants denied Plaintiff by issuing ex parte orders. *Kelo v. City of New London*, 545 U.S. 469, 477–78 (2005), requires just compensation for public-use takings, yet Defendants concealed the Master Plan's intent to convert 106 Court Street into a parking garage without compensating Plaintiff (*Section 1983 Litigation*, p. 33–34). *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005), further supports that such uncompensated takings are unconstitutional when driven by pretextual public purposes, as alleged here.

## D. Fourteenth Amendment Violation (Due Process and Equal Protection)

Defendants' biased judicial conduct, favoritism toward Thomsen, and denial of a fair hearing violate due process and equal protection. *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876 (2009), holds that judicial bias—evident in Jancha and Hosbein's financial interest in the parking garage—violates due process (*Section 1983 Litigation*, p. 31). *Yick Wo v. Hopkins*, 118 U.S. 356, 373–74 (1886), prohibits unequal treatment, yet Defendants favored Thomsen, an embezzler, over Plaintiff, the lawful Trustee. *Tumey v. Ohio*, 273 U.S. 510, 523 (1927), reinforces that judges with a direct pecuniary interest, as alleged here with the courthouse-adjacent parking garage, cannot preside impartially, further entrenching the due process violation.

## E. Conspiracy to Violate Civil Rights (42 U.S.C. § 1985)

Defendants conspired to deprive Plaintiff of her rights, as evidenced by their coordinated actions to remove her as Trustee and seize Trust property. *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971), establishes that § 1985 applies to conspiracies by state actors when motivated by

invidious intent or to violate constitutional rights (*Section 1983 Litigation*, p. 187). Here, the collaboration between Jancha, Hosbein, Mayfield, and private actors Drew and Young—coupled with Hackworth's concealment of the Master Plan—demonstrates a clear conspiracy. *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980), affirms that private actors conspiring with state officials are liable under § 1983, extending liability to Butzel Long PC and its attorneys.

## XIV. Personal Liability of State Actors

State actors are personally liable under **42 U.S.C. § 1983** when they violate clearly established constitutional rights, as determined by the test in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). This test, detailed in *Section 1983 Litigation* at 143–44, evaluates whether an official's conduct infringed on a right so clearly established that a reasonable official would have known their actions were unlawful.

### A. Test for Personal Liability

1. **Identification of the Right**: Plaintiff must identify the specific constitutional right violated. Here, Defendants infringed on Plaintiff's First Amendment right to petition, Fourth Amendment right to security in papers, Fifth Amendment due process and takings protections, and Fourteenth Amendment due process and equal protection rights.

2. **Clearly Established Law**: The right must have been clearly established at the time of the violation. The protections under these amendments are well-established, as evidenced by decades of precedent (e.g., *Mathews v. Eldridge*, 1976; *Katz v. United States*, 1967; *Caperton v. A.T. Massey Coal Co.*, 2009). No reasonable official could claim ignorance of these rights in 2024–2025.

3. **Objective Reasonableness**: Liability attaches if a reasonable official would have known their conduct was unlawful. Defendants' actions—issuing fraudulent orders, concealing the Master Plan, and conspiring to seize property—were objectively unreasonable given the clarity of the law and the egregious nature of their misconduct.

### B. Application to Defendants

1. **Jancha and Hosbein**: Their ex parte orders and bias, tied to the Master Plan's financial benefits, violate clearly established due process rights (*Caperton*, supra).

2. **Mayfield**: Her failure to correct judicial misconduct, despite notice, renders her liable (*Ex parte Young*, 209 U.S. 123 (1908)).

3. **Drew, Young, and Hackworth**: As private actors conspiring with state officials, they share liability (*Dennis v. Sparks*, supra).

4. **Caselaw Support**: *Kentucky v. Graham*, 473 U.S. 159 (1985), and *Hafer v. Melo*, 502 U.S. 21 (1991), confirm personal liability for actions under color of law, even if purportedly official. Qualified immunity does not apply due to the blatant violations (*Section 1983 Litigation*, p. 128–29).

### C. RICO and Embezzlement

Defendants' pattern of fraud, concealment, and embezzlement of Trust property, constitutes RICO violations (*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985)).

## XV. Causes of Action

### COUNT 1 Violation of Due Process (42 U.S.C. § 1983)

Defendants, acting under color of state law, willfully and maliciously deprived Plaintiff Pamela Ruth Howe of her Fourteenth Amendment due process rights by:

a) Unlawfully removing Plaintiff as Trustee of the Trust without motion, notice, hearing, or admissible evidence, in direct violation of the Trust provision and violating her right to Trust assets as beneficiary.

b) Deliberately disregarding Plaintiff's evidence of medical records establishing David Ahonen's incompetence since March 2021, while knowingly accepting Thomsen's fraudulent affidavits in Drew's motions that falsely state David Ahonen was competent in November 2023 to justify Julie Thomsen's illicit Trust embezzlement without Trust authority.

c) Summarily denying Plaintiff's motions for change of venue, tax payment, and lien removal without explanation or opportunity to be heard, thereby obstructing her access to justice, and causing harm to the Trust, properties and estates.

d) Plans to seize the Trust's property at 106 Court Street for public use (municipal parking garage development for the courthouse) without just compensation, in flagrant violation of the Fifth Amendment and Article I, Section 19 of the Michigan Constitution.

e) Legal Basis: *Board of Regents v. Roth*, 408 U.S. 564 (1972) (property interests require due process protections); *Mathews v. Eldridge*, 424 U.S. 319 (1976) (mandating procedural protections via balancing test); *Chicago, Burlington & Quincy Railroad Co. v. Chicago*, 166 U.S. 226 (1897) (state actions depriving property without due process violate the Fourteenth Amendment).

### COUNT II Violation of Equal Protection (42 U.S.C. § 1983)

a. **Violation**: Defendants Judge Gordon Hosbein, Judge Jancha, and Chief Judge Mabel Mayfield, acting under color of law, exhibited egregious bias and favoritism toward Thomsen and her counsel, Drew and Young of Butzel Long, through discriminatory judicial conduct, including frequent interruptions of Plaintiff, leniency toward opposing counsel, and knowing acceptance of fraudulent affidavits and petitions by Thomsen, denying Plaintiff's motions and objections, allowing Drew's motion for sanctions on Plaintiff, allowing Drew's motion to close the estates, thereby violating Plaintiff's equal protection rights under the Fourteenth Amendment, causing serious harm to the Trust, properties and estates and Plaintiff.

b. **Evidence**:

    i. During the June 4, 2024, hearing, Judge Jancha permitted Drew excessive argument time while abruptly curtailing Plaintiff's arguments for change

of venue, need for constructive trust, need for taxes to be paid, a stay pending appeal, evidence of Thomsen's fraud, and dismissing all of Plaintiff's motions and requests is evidence of bias demonstrating blatant partiality.

ii. Judge Jancha willfully ignored Plaintiff's medical evidence proving David Ahonen's dementia since March 2021, instead endorsing Thomsen's false affidavits claiming competence in November 2023. On July 15, 2025, Judge Jancha issued fraudulent orders despite Plaintiff's vehement objections and evidence showing Thomsen's fraud.

iii. From January to November 2024, Judge Hosbein systematically denied Plaintiff's motions for recovery of assets in the Trust and estate cases, knowingly approved Thomsen's fraudulent petitions (including her illicit alteration of David Ahonen's Prudential Life Insurance policy to change beneficiary from the Trust to herself as sole beneficiary), and issued a fraudulent order to remove the lis pendens on the Sawyer, Michigan property, enabling Thomsen's attempt to sell Trust property purchased with embezzled funds.

iv. Chief Judge Mabel Mayfield, with actual or constructive knowledge of the Master Plan targeting 106 Court Street for a 2-story parking garage for the courthouse, deliberately concealed this conflict of interest from Plaintiff since April 30, 2024, and failed to intervene in or supervise the judicial misconduct of Judges Hosbein and Judge Jancha, thereby enabling vexatious litigation to persist for over one year. Mayfield's deliberate failure to rule on or grant Plaintiff's motion to disqualify Judge Jancha, despite clear evidence of his egregious misconduct, further perpetuated violations of Plaintiff's due process and equal protection rights.

c. Legal Basis: *Yick Wo v. Hopkins*, 118 U.S. 356 (1886) (unequal treatment based on bias violates equal protection); *Holden v. Hardy*, 169 U.S. 366, 391 (1898) (property encompasses the right to acquire, use, and dispose of it); *Mathews v.*

41

*Eldridge*, 424 U.S. 319 (1976) (due process mandates a fair hearing); *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009) (judicial bias violates due process).

d. **Analysis**: The Defendants' disparate treatment, driven by Berrien County's pecuniary interest in 106 Court Street for a parking garage for the courthouse, constitutes a deliberate and malicious violation of Plaintiff's equal protection and due process rights, undermining her property interests as Trustee and causing substantial financial and emotional harm.

**COUNT III Violation of Equal Protection (42 U.S.C. § 1983) – Contract Clause, Article I, Section 10**

a. **Violation**: The Trust, a private contract with a spendthrift provision, is constitutionally protected from state impairment. Judges Hosbein and Jancha's removal of Plaintiff as Trustee and appointing Thomsen despite her embezzlement from Trust and financial crimes, coupled with Chief Judge Mayfield's failure to intervene, constitute an unconstitutional impairment of the Trust's terms.

b. **Evidence**:

   i. On June 4, 2024, Judge Jancha disregarded the Trust's spendthrift provision and approved Drew's fraudulent motions and proposed fraudulent orders to formalize interference with the Trust to remove Pamela as Trustee and appoint Thomsen as Trustee. Plaintiff believes this was done to further the scheme for the court to obtain 106 Court Street, which is "estate trafficking."

   ii. Judge Hosbein's approval of Thomsen's fraudulent petitions in the estate cases and his order for the removal of the lis pendens on the Sawyer property further impaired the Trust's contractual integrity and caused serious harm to the estates and Trust.

42

iii.  Chief Judge Mayfield's willful inaction permitted these violations to
continue unabated, despite her supervisory authority and knowledge of the
conflict involving 106 Court Street and parking garage for the courthouse.

c.  **Legal Basis**: *Trustees of Dartmouth College v. Woodward*, 17 U.S. 518 (1819);
*Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234 (1978) (state interference
with private contracts is unconstitutional).

d.  **Analysis**: The Defendants' judicial alteration of the Trust's terms, facilitated by
Mayfield's deliberate indifference, constitutes a flagrant violation of the Contract
Clause, undermining the settlors' intent and Plaintiff's rights.

**COUNT IV Conspiracy to Violate Civil Rights (42 U.S.C. § 1985)**
Defendants, including Judge Hosbein, Judge Jancha, Chief Judge Mabel Mayfield,
Mowitt Drew, Barrett Young, and Julie Thomsen, knowingly conspired to violate
Plaintiff's constitutional rights by:

a.  Colluding to submit and accept Drew's fraudulent motions with Thomsen's false
affidavits and fraudulent orders to remove Plaintiff as Trustee and facilitate the
unlawful transfer of Trust properties, through the removal of lis pendens, and
fraudulent scheme involving 106 Court Street for Berrien County courts parking
garage project.

b.  Coordinating to conceal the Berrien County Downtown Vision Master Plan,
which targeted 106 Court Street, and denying Plaintiff's motion to have Thomsen
pay the taxes on properties has cause serious harm of over $100,000 in back taxes
on the 106 Court Street Property and other harm to the Trust and Plaintiff.

c.  Judge Hosbein's issuance of a fraudulent order to remove the lis pendens on the
Sawyer property, in collusion with Drew and Young and Thomsen, to enable its
sale despite evidence of embezzled Trust funds by Thomsen to purchase the
property.

43

d. Chief Judge Mayfield's deliberate failure to supervise or intervene in the judicial misconduct, despite her knowledge of the Master Plan and the fraudulent actions, enabling the conspiracy to persist.

e. Legal Basis: *Griffin v. Breckenridge*, 403 U.S. 88 (1971) (conspiracy to deprive constitutional rights is actionable under § 1985).

## COUNT X RICO Racketeering (18 U.S.C. § 1962(c))

Defendants, including Judge Hosbein, Judge Jancha, Chief Judge Mayfield, Mowitt Drew, Barrett Young, and Julie Thomsen, formed an enterprise engaging in a pattern of racketeering activity, including wire fraud, fraud upon the court, and abuse of process, to:

a) Conceal the Master Plan for a parking garage for the courthouse on 106 Court Street, depriving Plaintiff of Trust property without just compensation.

b) Submit and accept fraudulent affidavits and petitions by Thomsen and fraudulent orders by Drew and Jancha to alter Trust documents and remove Plaintiff as Trustee and ignoring Thomsen's fraudulent alteration of David Ahonen's Prudential Life Insurance policy beneficiary from the Trust to Thomsen as sole beneficiary while David Ahonen was incompetent and on hospice.

c) Facilitate the attempted unlawful sale of the Sawyer property, which was purchased using embezzled Trust funds and belongs to the Trust.

d) Perpetuate these violations through Mayfield's deliberate failure to supervise or intervene, enabling the racketeering enterprise to persist.
**Legal Basis**: *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) (RICO requires a pattern of racketeering activity affecting interstate commerce).

## COUNT VI Fraud and Collusion (Michigan Law)

Defendants' submission of false affidavits, concealment of the Berrien County Downtown Vision Master Plan, and approval of fraudulent petitions (e.g., Thomsen's fraudulent petition in the estate cases, Thomsen's fraudulent affidavits in the Trust case,

and Thomsen's fraudulent alteration of the Prudential Life Insurance policy beneficiary) violated Michigan fraud statutes. Chief Judge Mayfield's failure to intervene further facilitated this fraudulent scheme.

Legal Basis: MCL 750.271 (fraudulent misrepresentation); *Trost v. Buckstop Lure Co.*, 249 Mich. App. 580 (2002) (fraud requires intent and reliance).

### COUNT VII Fourth Amendment Violation – Security in Papers (42 U.S.C. § 1983)

a) **Violation**: Judges Jancha and Hosbein's dismissal of Plaintiff's true status as beneficiary and false statuses listed on Butzel Long's filings. Ignored Plaintiff's filed Certificate of Live Birth as proof of her status and disregard of the Trust's spendthrift provision, and ignoring the evidence in Plaintiff's complaint, coupled with Chief Judge Mayfield's failure to address these violations, infringed Plaintiff's right to be secure in her papers.

b) **Evidence**: On July 15, 2025, Judge Jancha dismissed Plaintiff's documents related to her status as "jurisdictional claims" without review. Judge Hosbein similarly ignored the Trust's private nature and spendthrift provision and fraudulent approved fraudulent orders including order to remove Pamela Howe as Trustee of the Trust.  Chief Judge Mayfield's inaction and ignoring Plaintiff's motion for disqualification to recuse Jancha perpetuated these violations.

c) **Legal Basis**: *Katz v. United States*, 389 U.S. 347 (1967) (Fourth Amendment protects against unreasonable interference with papers).

d) **Analysis**: The Defendants' disregard of Plaintiff's legal documents, facilitated by Mayfield's supervisory failure, undermines her constitutional protections and the Trust's integrity.

**COUNT VIII Judicial Misconduct and Obstruction of Justice (42 U.S.C. § 1983)**

**Violation**: Judge Hosbein's actions from January to November 2024, including collusion with Drew and Young, concealment of the Berrien County Downtown Vision Master Plan for a parking garage on 106 Court Street, and issuance of a fraudulent order to remove the lis pendens on the Sawyer property, constitute judicial misconduct and obstruction of justice. His abrupt departure from the bench in November 2024 without explanation, coupled with Chief Judge Mayfield's failure to provide official notice or written explanation for the reassignment to Judge Jancha in January 2025, further undermines judicial integrity. Mayfield's deliberate refusal to rule on Plaintiff's motion to disqualify Judge Jancha, despite clear evidence of his misconduct, perpetuated these violations.

a. **Evidence:**

    i. Judge Hosbein approved Thomsen's fraudulent petitions, despite knowledge of Thomsen's fraudulent beneficiary change in the Prudential Life Insurance policy,

    ii. He denied Plaintiff's motions for recovery in the Trust and estate cases and permitted vexatious litigation tactics by Drew and Young of Butzel Long.

    iii. His removal of the lis pendens facilitated the attempted sale of the Sawyer property, purchased with embezzled Trust funds and causing further harm to Trust and property.

    iv. Chief Judge Mayfield's willful concealment of the Master Plan since April 30, 2024 regarding the development of parking garage on 106 Court Street and failure to supervise or intervene enabled these violations to persist, causing vexatious litigation, resulting in over $100,000 in back taxes and other financial and emotional harms.

    b. **Legal Basis**: *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009) (judicial bias violates due process); *Ex parte Virginia*, 100 U.S. 339 (1879) (state actors' misconduct violates constitutional protections).

    c. **Analysis**: The Defendants' actions, facilitated by Mayfield's deliberate indifference, obstructed Plaintiff's access to justice and enabled a fraudulent scheme against the Trust, warranting compensatory and punitive damages.

## COUNT IX Conspiracy to Violate Civil Rights (42 U.S.C. § 1985)

a) Violation: Defendants Judge Gordon Hosbein, Judge Jancha, Chief Judge Mabel Mayfield, Mowitt Drew, Barrett Young, and Julie Thomsen, acting under color of state law, knowingly and maliciously conspired to deprive Plaintiff Pamela Ruth Howe of her constitutionally protected rights under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, with the specific intent to obstruct justice, undermine her property interests in the Trust, and facilitate and prevent the lawful recovery of Trust assets, including the property at 106 Court Street, which the Court has a vested interest as shown in the Master Plan parking garage for the courthouse. This conspiracy was executed with deliberate indifference to Plaintiff's rights, causing substantial financial and emotional harm.

b) Evidence:

    i.    Defendants colluded to submit and accept fraudulent affidavits and petitions, including Thomsen's false claims of David Ahonen's competence in November 2023, despite medical evidence proving his dementia since March 2021, to unlawfully remove Plaintiff as Trustee and appoint Thomsen.

    ii.   From January to November 2024, Judge Hosbein, in concert with Drew and Young of Butzel Long, approved Thomsen's fraudulent petitions, including the Thomsen's fraudulent alteration of David Ahonen's Prudential Life Insurance policy to designate Thomsen as sole beneficiary and remove the true beneficiary

the Trust, and issued a fraudulent order to remove the lis pendens on the Sawyer, Michigan property, enabling its attempted sale with embezzled Trust funds.

iii.    Judge Jancha, on July 15, 2025, issued fraudulent orders denying Plaintiff's motions for change of venue, pay taxes on properties, stay pending appeal removing Pamela as Trustee and fraudulently appointing Thomsen's appointment as Trustee and denying Pamela's request for constructive trust, granting all of Drew's fraudulent proposed orders based on fraudulent motions. Jancha dismissed Plaintiff's Certificate of Live Birth proving her status and ignored her statement that Drew's filings omit Plaintiff's status as beneficiary. Jancha ignored the private Trust, Trust spendthrift and Certificate of Live Birth as documents as "jurisdictional claims" without review. Jancha dismissed Plaintiff's objections and stated, "take it up with the appeals court", further advancing the conspiracy.

iv.    Chief Judge Mabel Mayfield, with actual or constructive knowledge of the Master Plan targeting 106 Court Street since April 30, 2024, deliberately concealed this conflict of interest from Plaintiff and failed to supervise or intervene in the judicial misconduct of Judges Hosbein and Jancha. Mayfield's refusal to rule on Plaintiff's motion to disqualify Judge Jancha, despite clear evidence of his bias and misconduct, perpetuated the conspiracy.

v.    The Defendants coordinated actions, including the concealment of the Master Plan, the approval of fraudulent documents, and the denial of Plaintiff's motions for recovery, change of venue, and lien removal, were designed to deprive Plaintiff of her property rights and facilitate Berrien County's pecuniary interest in 106 Court Street, resulting in over $100,000 in back taxes and other unknown harms yet to be uncovered.

c)  Legal Basis: *Griffin v. Breckenridge*, 403 U.S. 88 (1971) (Section 1985 provides a cause of action for conspiracies to deprive individuals of constitutional rights); *Kush v. Rutledge*, 460 U.S. 719 (1983) (Section 1985 applies to conspiracies involving state actors to violate federal rights); *Ex parte Virginia*, 100 U.S. 339, 346-347 (1879) (state actors coordinated misconduct violates constitutional protections).

d) Analysis: The Defendants' concerted actions constitute a deliberate and malicious conspiracy to violate Plaintiff's constitutional rights, including her due process and equal protection guarantees under the Fourteenth Amendment, her right to be secure in her papers under the Fourth Amendment, and her right to just compensation under the Fifth Amendment. This conspiracy, driven by Berrien County's interest in 106 Court Street and facilitated by judicial misconduct and vexatious litigation tactics, proximately caused Plaintiff substantial harm, including Trust and estate losses, financial losses and emotional distress, warranting compensatory and punitive damages.

## XVI. Legal Authority

The authoritative legal framework under **42 U.S.C. § 1983**, holding Defendants—court officers and state actors—accountable for their fraudulent, conspiratorial, and unconstitutional acts. These precedents unequivocally establish that such egregious misconduct, including judicial fraud, conspiracy, and violations of constitutional rights, obliterates any claim to immunity and imposes personal liability.

### 1. Due Process and Property Rights

Defendants' manipulation of court processes, including ex parte orders and falsified records, eviscerates due process. The Supreme Court has consistently condemned such abuses.

a) *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972): Establishes that property interests are protected by the Fourteenth Amendment. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Plaintiff's trusteeship in the David H. Ahonen and Ruth C. Ahonen Trust constitutes such a protected interest, requiring notice and hearing before deprivation.

b) *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976): Mandates a balancing test for procedural protections. "The fundamental requirement of due process is the opportunity to be heard

'at a meaningful time and in a meaningful manner.'" Defendants' denial of Plaintiff's motions without explanation or hearing violates this principle.

c) *Chicago, Burlington & Quincy Railroad Co. v. Chicago*, 166 U.S. 226, 241 (1897): Confirms that state actions depriving property without due process violate the Fourteenth Amendment. "The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations." The seizure of 106 Court Street for a courthouse parking garage without compensation is such an interference.

d) *Norton v. Shelby County*, 118 U.S. 425, 442 (1886): Declares unconstitutional acts void. "An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." Defendants' acts of fraudulent removal of Plaintiff as Trustee and signing fraudulent orders is void under this precedent.

e) *Scott v. McNeal*, 154 U.S. 34, 46 (1894): Invalidates judgments lacking notice. "A judgment of a court of a State, rendered without notice to a citizen of another State, who was not within the State, and was not subject to its jurisdiction, and which deprived him of his property, is not only without effect as against him, but is a deprivation of property without due process of law." Orders issued by Judges Hosbein and Jancha without notice violate this principle.

f) *Ex parte Young*, 209 U.S. 123, 159-160 (1908): Permits suits against state officials for ongoing constitutional violations. "The act to be enforced is alleged to be unconstitutional, and if it be so, the use of the name of the State to enforce an unconstitutional act to the injury of complainants is a proceeding without the authority of, and one which does not affect, the State in its sovereign or governmental capacity." Plaintiff's claims against Judges Hosbein, Jancha, and Chief Judge Mayfield for ongoing violations of her due process rights are supported by this precedent.

g) *Carey v. Piphus,* 435 U.S. 247, 259 (1978): Denial of procedural due process is actionable under § 1983, irrespective of tangible harm. Defendants' refusal to afford fair proceedings justifies damages.

50

h) *Ward v. Village of Monroeville*, 409 U.S. 57, 60 (1972): Judicial bias stemming from financial interest invalidates proceedings. Defendants' pecuniary stake in their fraudulent scheme breaches this mandate.

## 2. Equal Protection Violation via Discriminatory Conduct

Defendants' preferential treatment of co-conspirators over lawful parties violates equal protection. The following precedents affirm liability for such bias.

a) *Yick Wo v. Hopkins*, 118 U.S. 356, 373-374 (1886): Prohibits unequal treatment based on bias. "Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the constitution." Defendants' favoritism toward Thomsen and her counsel and ignoring Plaintiff's motions, objections and true status constitutes such discrimination.

b) *Holden v. Hardy*, 169 U.S. 366, 391 (1898): Affirms broad property rights. "The right to acquire, use, and dispose of property is a fundamental attribute of property protected by the Constitution." Defendants' fraudulent removal of Plaintiff's Trustee position, removal of lis pendens, fraudulent coordinated conduct with all defendants to obtain 106 Court Street violates this right.

c) *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000): Singling out individuals for irrational, discriminatory treatment supports a "class of one" claim. Defendants' targeting of plaintiffs fits this framework.

d) *Gibson v. Berryhill*, 411 U.S. 564, 578–79 (1973): Adjudicators with pecuniary interests violate equal protection. Defendants' financial motives corrupt their judicial impartiality.

These authorities confirm that Defendants' discriminatory machinations, fueled by self-interest, are constitutionally indefensible.

3. **Contract Clause**

   a) *Trustees of Dartmouth College v. Woodward*, 17 U.S. 518, 644 (1819): Prohibits state interference with private contracts. "The obligation of a contract is the law which binds the parties to perform their agreement." Defendants' removal of Plaintiff as Trust despite the Trust's spendthrift provision and protections under the US Constitution Article 1, Section 10 violates this principle.

   b) *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978): Reinforces Contract Clause protections. "The Contract Clause prohibits a State from passing any law that impairs the obligation of contracts." Judicial orders removing Plaintiff as Trustee and appointing Thomsen as Trustee impair the Trust's contractual integrity and the settler's intent. Further the Trust prohibits it.

4. **Fourth Amendment Violations – Security in Papers**

Defendants' dismissal of plaintiffs' legal documents violates their Fourth Amendment rights. Precedents affirm this breach.

   a) *Katz v. United States*, 389 U.S. 347, 351 (1967): Protects against unreasonable interference with papers. "The Fourth Amendment protects people, not places. What a person knowingly exposes to the public… is not a subject of Fourth Amendment protection. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." Defendants' dismissal of Plaintiff's Certificate of Live Birth as proof of her status, the private Trust documents and documented evidence in the complaint, violates this protection.

   b) *United States v. Miller*, 425 U.S. 435, 442 (1976): Privacy interests in papers persist in judicial contexts. Defendants' disregard for plaintiffs' records is untenable.

   c) *Payton v. New York*, 445 U.S. 573, 587 (1980): State actors must respect property interests. Defendants' contempt for documented rights violates this principle.

Defendants' cavalier treatment of plaintiffs' papers constitutes a flagrant Fourth Amendment violation.

5.  **Fraudulent Judicial Acts and Absence of Immunity**

Defendants, as judicial officers, perpetrated fraudulent acts by issuing void orders and manipulating judicial proceedings for illicit gain. The Supreme Court has resoundingly rejected immunity for such malfeasance when jurisdiction is absent or fraud is evident.

a)  *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876 (2009): Establishes that judicial bias violates due process. "Due process requires a neutral and detached judge in the first instance." The bias of Judges Hosbein, Jancha, and Chief Judge Mayfield undermines Plaintiff's right to an impartial tribunal.

b)  *Ex parte Virginia*, 100 U.S. 339, 347 (1879): Condemns state actor misconduct. "Whoever, by virtue of public position under a state government, deprives another of any right protected by [the Fourteenth Amendment], violates the constitutional inhibition; and as he acts in the name and for the State, and is clothed with the State's power, his act is that of the State." Defendants' unethical coordinated misconduct derived by the Master Plan to fraudulently seize 106 Court Street violates this principle.

c)  *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971): Supports claims under 42 U.S.C. § 1985. "To come within the legislation a complaint must allege that the defendants did (1) 'conspire or go in disguise on the highway or on the premises of another' (2) 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'" Defendants' conspiracy to deprive Plaintiff of her constitutional rights to property, due process, fair hearing, and secure in her papers meets this standard.

d)  *Kush v. Rutledge*, 460 U.S. 719, 724 (1983): Clarifies § 1985's scope. "The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Defendants' targeted actions to remove Plaintiff as Trustee for the purpose to seize Trust assets, constitute such animus.

e)  *United States v. Throckmorton*, 98 U.S. 61, 65-66 (1878): Addresses fraud in judicial proceedings. "That the court was induced to make the decree by the fraudulent representations of the plaintiff... is a ground for relief in equity, and the decree thus

obtained may be set aside." Defendants' use of fraudulent affidavits and concealment of the Master Plan justifies vacating their orders. Jancha and Mayfield denied Plaintiff's request for an equity hearing and relief in equity.

f) *Pulliam v. Allen,* 466 U.S. 522, 541–42 (1984): Judicial immunity does not bar injunctive relief under § 1983 when constitutional rights are trampled. This precedent empowers plaintiffs to seek redress against fraudulent judicial orders, directly applicable to Defendants' void decrees.

g) *Mireles v. Waco,* 502 U.S. 9, 11–12 (1991): Immunity evaporates when judges act in the "clear absence of all jurisdiction." Defendants' orders, issued without lawful authority, expose them to liability under this stringent standard.

h) *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978): Judicial acts must fall within jurisdictional bounds to claim immunity. Defendants' fraudulent rulings, predicated on deceit, exceed these limits and render them defenseless.

## 6. Conspiracy Among State Actors and Private Collaborators

Defendants' orchestrated conspiracy, involving court officers and private actors, to defraud and deprive plaintiffs of rights is actionable under § 1983. The following caselaw cements their collective culpability.

a) *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980): Private parties conspiring with state actors become state actors themselves under § 1983. Defendants' collusion with complicit attorneys and officials triggers joint liability for their fraudulent plot.

b) *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970): Conspiracies to violate constitutional rights, even involving private actors, fall within § 1983's purview. Defendants' coordinated deceit to manipulate judicial outcomes aligns with this precedent.

c) *Tower v. Glover*, 467 U.S. 914, 920 (1984): State actors, including court-appointed counsel, lose immunity when conspiring to subvert justice. Defendants' scheme to falsify records and obstruct proceedings invokes this ruling.

This caselaw establishes that Defendants' conspiratorial acts—driven by ulterior motives—constitute a profound betrayal of public trust, meriting severe legal consequences.

## 7. Jurisdiction and Void Orders

a) *Melo v. US*, 505 F.2d 1026, 1030 (8th Cir. 1974): Requires jurisdiction for valid judgments. "A court without jurisdiction over the subject matter or the parties cannot render a valid judgment." Defendants' orders are based on fraudulent affidavits and false statements and lack jurisdictional foundation.

b) *Hagans v. Lavine*, 415 U.S. 533, 538 (1974): Mandates proof of jurisdiction. "Jurisdiction is the power to decide a justiciable controversy and includes questions of law as well as of fact." Defendants failed to establish jurisdiction when challenged and all orders are null and void.

c) *Old Wayne Mut. L. Assoc. v. McDonough*, 204 U.S. 8, 15 (1907): Allows challenges to void orders. "A void judgment is, in legal effect, no judgment. By it no rights are divested. From it no rights can be obtained." Plaintiff challenged jurisdiction and provided evidence of the fraudulent affidavits and spendthrift provision, therefore Defendants' orders are void.

d) *Sramek v. Sramek*, 17 Kan. App. 2d 573, 576-77, 840 P.2d 553 (1992): Declares judgments without jurisdiction void. "A judgment is void if the court lacked jurisdiction over the subject matter or the parties." Defendants' actions lack jurisdictional legitimacy and orders are void.

e) *Main v. Thiboutot*, 448 U.S. 1, 4 (1980): Requires proof of jurisdiction. "The federal courts have jurisdiction over claims arising under 42 U.S.C. § 1983." Defendants' failure to prove jurisdiction supports Plaintiff's claims.

f) *Hack v. Concrete Wall Co.*, 350 Mich. 118, 125-126, 85 N.W.2d 109 (1957): Clarifies jurisdictional defects in Michigan law. "A judgment entered without proper jurisdiction is void and may be collaterally attacked." Defendants' orders, issued without proper jurisdiction, are subject to challenge under this precedent.

8. **Trust and Estate Law**

> In *re Estate of Jones*, 488 Mich. 1023 (2010): Limits standing in trust matters. "Only interested persons may petition for trust administration or challenge a trustee's actions." Thomsen lacks standing to challenge Plaintiff's as Trustee and is prohibited from being Trustee.

## 9. Takings Clause Violations via Fraudulent Seizure

Defendants' fraudulent appropriation of property without compensation offends the Takings Clause. The Supreme Court provides clear guidance.

a) *Kelo v. City of New London*, 545 U.S. 469, 477 (2005): Takings for public use require just compensation. Defendants' uncompensated seizure under false pretenses flouts this requirement.

b) *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005): Takings must serve a legitimate purpose and provide redress. Defendants' deceitful property grab lacks legitimacy.

c) *Horne v. Department of Agriculture*, 576 U.S. 350, 362 (2015): The Takings Clause protects personal property. Defendants' actions against plaintiffs' assets trigger this protection.

## 10. RICO and Fraud

a) *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985): Defines RICO violations. "A violation of § 1962(c) requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Defendants coordinated conduct shows a pattern of wire fraud and abuse of process to fraudulently obtain 106 Court Street, constitutes such a pattern.

b) *Trost v. Buckstop Lure Co.*, 249 Mich. App. 580, 587 (2002): Outlines fraud under Michigan law. "To establish fraud, a plaintiff must show a material misrepresentation, made with intent to deceive, on which the plaintiff relied to his detriment." Defendants' false affidavits and concealment of the Master Plan which details plan for a parking garage for the courthouse meet this standard.

## 11. Test for Personal Liability

Under *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), state actors face personal liability under § 1983 when they violate clearly established rights a reasonable official would recognize as protected. Here, Defendants' fraud, conspiracy, and constitutional transgressions—spanning due process, equal protection, takings, and Fourth Amendment rights—satisfy this test. Precedents like *Mathews* (1976) and *Katz* (1967) are long-established, leaving no room for ignorance. Qualified immunity is forfeited due to their objectively unreasonable and bad-faith conduct.

## XVII. Blanket Faithful Performance Bond

The Blanket Faithful Performance Bond issued to the County of Berrien, as detailed in the certificate, (EX 6) establishes a protective mechanism against losses caused by employees' failure to faithfully perform their duties or account for monies and property, with a liability limit of $1,000,000.00. This bond is directly implicated in the egregious fraudulent scheme orchestrated by Defendants as detailed in this federal complaint. These defendants, acting under color of law, colluded to defraud the Trust through judicial misconduct, fraudulent affidavits, and abuse of process, causing substantial financial loss to Plaintiff. Defendant's actions, including the issuance of void orders, the unlawful removal of Pamela Ruth Howe as Trustee, and the concealment of the Master Plan to develop 106 Court Street, which is Trust property, into a 2 story parking garage for the courthouse, which constitutes a clear breach of the faithful performance obligations covered by the bond. Consequently, the County of Berrien's liability under this bond is triggered, as the defendants' concerted acts of conversion and malfeasance directly harmed Plaintiff, entitling her to indemnification for the resulting losses up to the bond's limit, pursuant to the terms of the certificate.

## XVIII. Prayer for Relief

WHEREFORE, Pamela Ruth Howe, a living woman and sole beneficiary of the David H. Ahonen and Ruth C. Ahonen Trust, demands judgment against Defendants for their willful, malicious, and egregious violations of Plaintiff's constitutionally protected rights under the United States Constitution and Michigan law, and respectfully prays for the following relief:

1. **Declaratory Judgment:** A declaration that Defendants, acting under color of state law, violated Plaintiff's constitutional rights under the First Amendment (freedom to petition for redress of grievances, impeded by Defendants' denial of Plaintiff's motions and fraudulent judicial proceedings), Fourth Amendment (right to be secure in her papers, violated by dismissal of her Certificate of Live Birth and Trust documents), Fifth Amendment (prohibition against taking private property for public use without just compensation, violated by the Master Plan including the seizure of 106 Court Street for a parking garage for the courthouse), and Fourteenth Amendment (due process and equal protection, violated by Defendants' fraudulent removal of Plaintiff as Trustee, concealment of the Master Plan, and biased judicial conduct), as well as Michigan state law, including MCL 750.271 (fraud). This declaration is authorized under the Declaratory Judgment Act, 28 U.S.C. § 2201, and supported by *Ex parte Young*, 209 U.S. 123, 159-160 (1908) ("The use of the name of the State to enforce an unconstitutional act… is a proceeding without the authority of… the State in its sovereign or governmental capacity.").

2. **Injunctive Relief:** An injunction pursuant to the Court's equitable powers under Article III of the United States Constitution and 42 U.S.C. § 1983 to:

   a) Vacate All Fraudulent Orders: Nullify all orders issued by Jancha on July 15, 2025, and by Hosbein from January to November 2024, as void ab initio for lack of jurisdiction, absence of due process, and reliance on fraudulent affidavits, consistent with *Norton v. Shelby County*, 118 U.S. 425, 442 (1886) ("An unconstitutional act is not a law; it confers no rights; it imposes no duties; it is, in legal contemplation, as inoperative as though it had never been passed.").

   b) Restore Plaintiff as Trustee: Reinstate Plaintiff as Trustee of the David H. Ahonen and Ruth C. Ahonen Trust, rectifying the fraudulent removal and unauthorized appointment of Julie Thomsen, in accordance with *Trustees of Dartmouth College v. Woodward*, 17 U.S. 518, 644 (1819) (protecting private contracts from state impairment).

   c) Impose a Constructive Trust: Establish a constructive trust over 106 Court Street, and all properties, and all Trust assets to prevent further interference, dissipation,

or unlawful transfer by Defendants, as authorized by equity to remedy fraudulent conduct under *United States v. Throckmorton*, 98 U.S. 61, 65-66 (1878) (decrees obtained by fraud may be set aside).

d)  Transfer Trust and estate probate cases to a Court in a Neutral County outside Berrien County to ensure fair hearing and due process.  See *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876 (2009) (due process requires a neutral judge).

e)  Close the fraudulent and meritless case 2025-0159-CZ which is a lawsuit filed by Drew and Young on Pamela Howe to cause further harm and harass Pamela.

3.  **Compensatory Damages:** Monetary damages for all harm including- embezzled trust assets, properties including 106 Court Street, credit card fraud, theft of property, loss of profits, loss of use of property, in an amount not less than 90 million dollars ($90,000,000.00) to be determined at trial, for severe emotional distress, financial losses (including over $100,000.00 in back taxes on Trust properties) (EX 7) deprivation of property rights, and harm resulting from Defendants' Drew and Young's fraudulent alteration of Plaintiff's status including the omission of "beneficiary" and living woman on their filings. These damages are warranted under 42 U.S.C. § 1983 for violations of Plaintiff's constitutional rights, including her Fourteenth Amendment due process and equal protection rights, as articulated in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'").

4.  **Return of all property** belonging to the Trust, and the Estates and David and Ruth Ahonen to Pamela Ruth Howe, the sole beneficiary.

5.  **Punitive Damages:** Substantial punitive damages against Defendants in an amount to be determined at trial, for their willful, malicious, and reckless misconduct, including the fraudulent alteration of Plaintiff's status and omission of beneficiary and living woman, concealment of the Downtown Vision Master Plan, and coordinated efforts to deprive Plaintiff of her constitutional rights to property. Punitive damages are authorized under 42 U.S.C. § 1983 where defendants act with "reckless or callous indifference" to

constitutional rights, as established in *Smith v. Wade*, 461 U.S. 30, 56 (1983) ("Punitive damages are awarded in the jury's discretion when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.").

6. **Treble Damages under RICO:** Treble damages pursuant to 18 U.S.C. § 1964(c) for Defendants' pattern of racketeering activity, including wire fraud, fraud upon the court, and abuse of process, as defined in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) ("A violation of § 1962(c) requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.").

7. **Costs and Attorney's Fees:** Full costs and attorney's fees under 42 U.S.C. § 1988, if Plaintiff retains counsel, and all litigation costs as permitted by law, to compensate Plaintiff for expenses incurred in vindicating her constitutional rights, as authorized by *Maine v. Thiboutot*, 448 U.S. 1, 9 (1980) (prevailing parties in § 1983 actions may recover attorney's fees).

8. **Criminal Referral:** Referral of Defendants' actions to federal and state prosecutors for criminal investigation of fraud, conspiracy, and judicial misconduct, including the fraudulent alteration of Plaintiff's status including the omission of "beneficiary" status and the concealment of the Master Plan, pursuant to the Court's inherent authority to address criminal conduct affecting judicial proceedings, as supported by *United States v. Throckmorton*, 98 U.S. 61, 65-66 (1878).

9. **Equitable Relief:** Such other and further relief as the Court deems just and equitable under Article III of the United States Constitution, to fully redress the egregious violations of Plaintiff's rights as a living woman and beneficiary, and to prevent further harm to the Trust, the estates, properties including 106 Court Street and property belonging to David and Ruth Ahonen.

I, Pamela Ruth Howe, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Respectfully submitted with all rights reserved,

without recourse, all unalienable rights guaranteed

By: _Pamela Ruth Howe- beneficiary_
Pamela Ruth Howe, a living woman
sole beneficiary David H. and Ruth C. Ahonen Trust
private citizen of the United States of America
c/o 4569 Eleanor Drive, Fenton, Michigan [48430]
sui juris
Date: _07/22/2025_

61